# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lianqin Zhang,                                    :
                              Petitioner           :
                                                  :
         v.                                        :     No. 2151 C.D. 2014
                                                  :     Submitted:  May 29, 2015
Workers' Compensation                              :
Appeal Board (Penn State Milton                    :
S. Hershey Medical Center and                      :
Inservco Insurance Services),                      :
                              Respondents           :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                         FILED:  August 5, 2015


         Petitioner Lianqin Zhang (Claimant), *pro se*, petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a Workers' Compensation Judge (WCJ).  The WCJ denied Claimant's claim petition.  We now affirm.

         Claimant was employed by Penn State Milton S. Hershey Medical Center (collectively with Inservco Insurance Services, Employer) as an electron microscopy (EM) technician.  Claimant's job duties included processing tissue samples.  Claimant worked in three rooms in Employer's lab:  the dark room, the EM room, and the sample processing room.  Work in the sample processing room included the use of various chemicals, but the room contained a fume hood, which

shielded employees from the chemicals. Claimant also worked with chemicals in the dark room where there was no fume hood. During the course of her employment, Claimant was exposed to nineteen different chemicals. Claimant began to develop symptoms, and, on September 29, 2011, she filed a claim petition alleging that she had sustained a "[r]espiratory tract injury with asthma; gastritis; anemia; and depression related to chemical exposure at work." (Certified Record (C.R.) at 1.)[1] Employer filed an answer denying the material allegations of Claimant's claim petition, and the matter was assigned to a workers' compensation judge (WCJ).

At the hearing before the WCJ, Claimant testified that she worked for Employer for six months—from February 14, 2011, through August 10, 2011. (Notes of Testimony (N.T.), 8/2/12, at 12.) Claimant testified that the fume hood in the sample processing room consisted of a deflector shield and a sash. (*Id.* at 19.) When she worked, the sash was raised and her hands were in direct contact with the materials with which she was working. (*Id.*) Claimant felt that her breathing was obstructed in the sample processing room. (*Id.* at 27.) Employer did not provide Claimant with safety training or warnings concerning the exposure to chemicals. (*Id*. at 29-30.) Although Claimant wore a lab coat and gloves in the sample processing room, Employer did not provide her with additional protective gear. (*Id.* at 30.) Claimant worked five-to-seven hours a day in the sample processing room. (*Id.* at 31.) In the dark room, Claimant developed films from the electron microscope. (*Id.* at 33.) Her work involved processing film in various

---

[1] By Order dated May 5, 2015, this Court granted a motion which excused Claimant from filing a reproduced record.

solutions, which were placed in open pans. (*Id.*) Because the pans were open, Claimant was exposed to the chemical fumes emanating from the solutions. (*Id.*) Claimant spent three-to-four hours a day in the dark room. (*Id.* at 33-34.)

Claimant began to develop symptoms, such as chest pain, one or two weeks after she began working for Employer. (*Id.* at 50.) She lost her sense of both taste and smell in June 2011. (*Id.*) In May 2011, Claimant told her supervisor, Patricia Karlisch, that Claimant believed her symptoms were work-related. (*Id.* at 53.) Claimant then developed depression and asthma, which she also believed to be work-related. (*Id.* at 80-83.) Ms. Karlisch directed Claimant to visit a panel physician, who ultimately advised that Claimant could work full duty but should refrain from working with chemicals. (*Id.* at 60-67.) Claimant's primary care physician and Claimant's pulmonologist, Rebecca Bascom, M.D., both recommended medical leave. (*Id.* at 70-74.) Employer granted Claimant an extended leave of absence, but Employer terminated her employment on November 28, 2011, because she failed to return to work. (*Id.* at 78-79.) Claimant's symptoms did not improve after her employment was terminated, even after mold was removed from her home. On February 10, 2012, the Occupational Safety and Health Administration (OSHA) cited Employer for, *inter alia*, failing to maintain the fume hood in good, working condition, failing to monitor Claimant for signs of chemical exposure, and failing to train Claimant about the hazards of chemical exposure. (C.R., OSHA Inspection Detail.)

Claimant presented the deposition testimony of Margit Bleecker, M.D., Stella Hines, M.D., Barbara Kuhlengel, M.D., and Michael Geppert. Dr. Bleecker diagnosed Claimant with severe clinical depression and encephalopathy from toxic exposure. (Bleecker Dep. at 19, 25.) Dr. Hines

3

diagnosed Claimant with occupational asthma. (Hines Dep. at 22.) Dr. Kuhlengel diagnosed Claimant with major depressive disorder and acute stress disorder. (Kuhlengel Dep. at 12.) All three doctors testified that Claimant's conditions were work-related. Michael Geppert, whose company tested the sample processing room fume hood on April 9, 2010, and October 3, 2011, testified that the fume hood did not meet the American National Standards Institute (ANSI) standards for laboratory fume hood air flow during the April 2010 inspection. (Geppert Dep. at 7-8.) During the October 2011 inspection, the fume hood only passed inspection because the sash was not opened widely. (*Id.* at 13-14.) Despite the failure to conform to ANSI standards, air was still flowing through the fume hood. (*Id.* at 21-22.)

Ms. Karlisch and Douglas Kuhn, Ph.D., testified before the WCJ on behalf of Employer. Ms. Karlisch testified that despite Claimant's contentions, Employer provided Claimant with protective safety gear, including a lab coat, gloves, splash shield, and a safety mask. (N.T., 10/31/12, at 59, 64.) Ms. Karlisch further testified that Employer warned Claimant about the hazardous chemicals, as signs were posted in the lab area and Claimant signed the material safety data sheets (MSDS), which provided all relevant information about the chemicals. (*Id.* at 56.) Claimant also received safety training concerning the use of some of the chemicals. (*Id.* at 17-18.) Claimant did not inform Ms. Karlisch that she believed her symptoms to be work-related until July 2011. (*Id.* at 68.) Although Claimant testified that she worked in the sample processing room for five-to-seven hours a day, Ms. Karlisch explained that such a schedule was not possible given Claimant's time sheet. (*Id.* at 59-63.) Dr. Kuhn testified that the fume hood did not meet institutional standards in April 2010 and July 2011, but it did meet

4

institutional standards in November 2010. (N.T., 12/4/12, at 12-14.) Even when the fume hood did not meet institutional standards, air was always flowing through it. (*Id.* at 16-17.)

Employer presented the deposition testimony of Jeff Marshalek, Scott Manaker, M.D., and Wolfram Rieger, M.D. Mr. Marshalek testified that his job duties include testing the ventilation in Employer's facility. (Marshalek Dep. at 7.) After testing the dark room ventilation on August 9, 2011, Mr. Marshalek found that the ventilation exceeded minimum requirements. (*Id.* at 11.) Dr. Rieger testified that he performed an independent psychiatric evaluation of Claimant. He diagnosed Claimant with somatoform disorder, which was unrelated to her employment. (Rieger Dep. at 43, 65-66.) Claimant did not suffer from clinical depression or anxiety. (*Id.* at 41-42.) Dr. Rieger explained that somatization occurs when inner conflict is expressed through vague, physical complaints. (*Id.* at 42.) He opined that Claimant could function well in a related field. (*Id.* at 45.) Dr. Manaker also opined that Claimant was expressing symptoms of somatization, although he linked it to major depression. (Manaker Dep. at 45.) He testified that after examining Claimant, there was "no evidence whatsoever of any respiratory or pulmonary occupational, work-related, chemical-exposure-related injury, illness, disease, disorder, [or] condition." (*Id.* at 48.)

The WCJ denied Claimant's claim petition and concluded that "Claimant failed to meet her burden of proving that she sustained a work-related injury while employed by [Employer]." (WCJ Decision at 53.) In so doing, the WCJ determined that the testimony of Claimant, Dr. Bleecker, Dr. Hines, and Dr. Kuhlengel was not credible. The WCJ determined that the testimony of Ms. Karlisch, Mr. Geppert, Dr. Kuhn, Mr. Marshalek, Dr. Manaker, and Dr. Rieger

5

was credible. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant now petitions this Court for review.

On appeal,[2] Claimant argues that the Board's incorrect description of Claimant's work history indicates that the Board failed to consider the evidence in this matter, that the record does not contain admissible evidence, that the WCJ's credibility determinations regarding Claimant, Dr. Kuhn, Dr. Manaker, and Dr. Rieger were not reasoned, and that she was deprived of her constitutional right to a fair trial.[3]

Claimant first argues that the Board's description of her work history is inconsistent with the WCJ's findings concerning her work history and, therefore, the Board failed to properly consider all the evidence in this matter. The Board, in summarizing her work history, stated that "Claimant worked for Penn State University College of Medicine for thirteen years as an [EM] technician." (Bd. Op. at 2.) The WCJ, however, found that Claimant "did research only and no EM work" during the course of her employment at Penn State University College of Medicine. (WCJ Decision, F.F. No. 7.) We agree that the Board's description of Claimant's employment history is inconsistent with the WCJ's findings. The

_____

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[3] Employer contends that Claimant's appeal should be quashed for her failure to abide by Pa. R.A.P. 2101 and Pa. R.A.P. 2152-54. This Court has already addressed this issue by granting Claimant's motion to be excused from filing a reproduced record and dismissing Employer's motion to quash, in which Employer made the same arguments concerning Claimant's failure to file a reproduced record. (Order of Senior Judge Oler, May 1, 2015). We decline to revisit the Court's rulings on these matters.

6

Board's misstatement, however, does not constitute reversible error. Claimant's work history is not material to the central issue of this matter—namely, whether Claimant suffered a work-related injury. *See Benson v. Workmen's Comp. Appeal Bd. (Haverford State Hosp.)*, 668 A.2d 244, 248-49 (Pa. Cmwlth. 1995). Accordingly, we reject Claimant's argument that the Board's incorrect description indicates that the Board failed to consider the evidence in this matter.

Claimant next takes issue with some of the evidence either included or not included in the certified record. Specifically, Claimant contends that the record is missing documentation concerning the OSHA inspection as well as a maintenance work order, dated October 14, 2011, for the fume hood. She also contends that the WCJ erroneously admitted an irrelevant formaldehyde vapor analysis report.[4]

Claimant's arguments concerning the OSHA inspection record and the maintenance work order have already been rejected by this Court. On March 30, 2015, Claimant filed a motion to supplement the evidence in this Court, seeking to supplement the record with these documents. By Order dated April 7, 2015, Senior Judge Oler denied Claimant's motion and concluded that "the documents with which [Claimant] seeks to supplement the record are already contained therein (Exhibit C-19, and OSHA detail sheet . . . ) or were not admitted into evidence (work order 295385[, dated October 14, 2011] . . . )." We decline to revisit this decision.

---

[4] Claimant further appears to argue that the record improperly contains black and white photos of the fume hood, rather than color photos. After a careful review of the certified record, we have ascertained that it contains color photos. We, therefore, reject Claimant's argument concerning the color photos.

Claimant also argues that the WCJ erroneously admitted an irrelevant formaldehyde vapor analysis report, regarding the functionality of the fume hood, which was tested six months after Claimant left her employment with Employer. "[I]t is well-settled that workers' compensation judges are not bound by either common-law or statutory rules of evidence." *LeDonne v. Workers' Comp. Appeal Bd. (Graciano Corp.)*, 936 A.2d 124, 130 (Pa. Cmwlth. 2007). The Administrative Agency Law[5] provides: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa. C.S. § 505. "This statutory maxim has been correctly interpreted to mandate a relaxation of the strict rules of evidence in hearings and proceedings, such as those held by a WCJ." *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless and Alloy Prods.)*, 861 A.2d 938, 947 (Pa. 2004). If the evidence was inadmissible, this "Court must determine whether, excluding the inadmissible [evidence], the factual findings to which that evidence related are nonetheless supported by substantial evidence." *Cruz v. Workers' Comp. Appeal Bd. (Phila. Club)*, 728 A.2d 413, 416 (Pa. Cmwlth. 1999).

The fume hood's functionality in 2012, while not the most probative evidence available to the WCJ, is relevant and reasonably probative on the issue of whether the fume hood was sufficiently operational to protect employees. The admitted evidence tracked inspections and repairs from 2010 through 2012, both before and after Claimant's employment with Employer. Further, regardless of the document's admissibility, the WCJ's findings regarding the fume hood did not rely solely on the 2012 report. The WCJ relied on the testimony of Dr. Kuhn,

---

[5] 2 Pa. C.S. §§ 501-08, 701-04.

8

Mr. Geppert, and Mr. Marshalek in finding that the fume hood worked during Claimant's employment with Employer. Accordingly, we reject Claimant's argument that the WCJ erroneously admitted irrelevant evidence.

Claimant next argues that the WCJ's credibility determinations regarding Claimant, Dr. Kuhn, Dr. Manaker, and Dr. Rieger are not reasoned. "[I]t has long been recognized that the WCJ has the exclusive authority to make findings of fact and credibility determinations." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). These findings, however, must be supported by adequate reasons for accepting or rejecting conflicting evidence. *Id.*; Section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. Where the WCJ has observed witnesses testify, "it is appropriate for the [WCJ] to base his or her determination upon the demeanor of the witnesses." *Daniels*, 828 A.2d at 1052. If a WCJ does not observe a witness's demeanor, the WCJ must articulate an actual objective basis which supports the credibility determination. *Id.*

Claimant first contends that the WCJ's reasons for finding Claimant not credible were insufficient. Specifically, Claimant takes issue with one of the inconsistencies in Claimant's testimony that the WCJ identified while explaining why he did not believe that Claimant was credible. The WCJ noted that while Claimant claimed that she processed samples every day, Ms. Karlisch "established that there were several days each week that Claimant did not have to process samples." (WCJ Decision at 50.) Claimant suggests that this determination is erroneous, because even if Claimant only received samples a few times a week, it took three days to process the samples. With respect to the number of days each week that Claimant had to process samples, Ms. Karlisch testified:

9

> Q. And then the next question [asked of Claimant] was, were there days when you were not exposed at all to these chemicals. [Claimant responded: "]No, every day. I received new samples every day.["]
>
> A. That is not true. From the data I was able to pull from the records that we have with the [samples], every single week there was one of two days that there were no [samples] delivered. When you're processing, they sit for 20 minutes or 30 minutes in whatever vial they're in. You are not exposed to them every moment of every hour of every day.

(N.T. 10/31/12, at 67.) From the record, it is unclear whether Ms. Karlisch was countering Claimant's testimony regarding her daily exposure to chemicals or the frequency with which she received samples. Even if the WCJ mischaracterized the testimony, however, the WCJ identified several additional inconsistencies that support his determination as to Claimant's credibility.[6] These evidentiary inconsistencies were sufficient, objective reasons for the WCJ to determine that Claimant's testimony was not credible. Further, the WCJ was able to observe the Claimant's demeanor, which alone is a sufficient basis to find her not credible.

---

[6] The WCJ noted that Claimant's testimony conflicted with medical records, Claimant's work history, and the testimony of credible witnesses with respect to the protective equipment provided by Employer, the warnings concerning the lab chemicals, the timing of Claimant's communication of her work injury to Employer, the number of hours Claimant spent working in the sample processing room, and the improvement of Claimant's symptoms after mold was removed from her home. With respect to the warnings for lab chemicals, Claimant suggests that although she reviewed the MSDS sheets, such a review was not a proper substitute for formal safety training. She further suggests that while she did work with the same chemicals in the past, it was under safe conditions. Neither of these contentions, however, affects the inconsistency identified by the WCJ—namely, that Claimant testified that there were no warnings for the lab chemicals, yet, Claimant had reviewed the MSDS sheets and had worked with the same chemicals in the past.

10

*Daniels*, 828 A.2d at 1052. We, therefore, reject Claimant's argument that the WCJ's reasons for determining that Claimant was not credible were insufficient.[7]

Claimant next argues that the WCJ's credibility determination concerning Dr. Kuhn was insufficiently reasoned. Claimant contends that Dr. Kuhn's testimony that the fume hood worked and presented minimal risk to employees conflicts with OSHA's finding that the fume hood did not function properly and put employees at risk, and, therefore, Dr. Kuhn's testimony was not credible. Despite Claimant's contentions, however, the resolution of an evidentiary conflict does not render the WCJ's credibility determination unreasoned. *Cittrich v. Workmen's Comp. Appeal Bd. (Laurel Living Ctr.)*, 688 A.2d 1258, 1259 (Pa. Cmwlth. 1997) (explaining that determinations concerning weight given to conflicting evidence are solely for WCJ). The WCJ's reasons for finding Dr. Kuhn credible were Dr. Kuhn's inspection of the fume hood, Dr. Kuhn's "impressive credentials," and his understanding of Employer's exhaust systems. (WCJ Decision, F.F. 222.) Further, the WCJ observed Dr. Kuhn's demeanor when Dr. Kuhn testified, which, as noted above, is a sufficient basis for determining that Dr. Kuhn was credible. We, therefore, reject Claimant's argument that the credibility determination regarding Dr. Kuhn was insufficiently reasoned.

Claimant next contends that the credibility determinations regarding Dr. Manaker and Dr. Rieger are not reasoned because the doctors' opinions conflict with each other. Claimant notes that Dr. Manaker diagnosed Claimant

---

[7] Claimant also appears to argue that Ms. Karlisch's testimony should be considered not credible. Ms. Karlisch testified before the WCJ, and, therefore, the WCJ could have found her to be credible based upon her demeanor, without providing reasons for the determination.

11

with depression, while Dr. Rieger diagnosed Claimant with somatization disorder. According to Claimant, such an inconsistency renders the WCJ's credibility determinations in this regard unreasoned. The WCJ, however, accepted the testimony of Dr. Manaker and Dr. Rieger for different purposes. "The WCJ has broad discretionary powers and may accept or reject testimony of any witness in whole or in part." *Sergeant v. Workmen's Comp. Appeal Bd. (Interim Pers.)*, 686 A.2d 902, 904 (Pa. Cmwlth. 1996). With respect to Dr. Manaker, the WCJ noted that he "credibly testified that there is no evidence whatsoever that Claimant has any respiratory or pulmonary, occupational, work-related, chemical-exposure-related injury, illness, disease, disorder, or condition." (WCJ Decision at 51.) Further, the WCJ accepted Dr. Manaker's testimony "that Claimant's somatic complaints do not demonstrate the presence of a true disease." (*Id.* at 51-52.) The WCJ did not accept Dr. Manaker's testimony that Claimant suffered from depression. Rather, the WCJ determined that Dr. Rieger's testimony was "credible in its entirety" and noted that Dr. Rieger "opined that Claimant suffers from somatization disorder." (*Id.* at 52-53.) The WCJ, therefore, accepted Dr. Rieger's testimony concerning Claimant's psychiatric diagnosis[8] and accepted

---

[8] Claimant contends that Dr. Rieger "did not use evidence from the[] record" in rendering his opinion that Claimant suffered from somatization disorder. (Cl. Br. at 15.) Claimant points to Dr. Rieger's belief that Claimant's disorder resulted from an unhappy childhood in China during the Cultural Revolution as proof that Dr. Rieger's opinion was based on conjecture. Claimant argues that Dr. Rieger's opinion conflicts with records indicating that she had a happy childhood. Dr. Rieger, however, testified that he spent fourteen hours reviewing Claimant's medical records and the WCJ found that "Dr. Rieger based his opinions on the voluminous amount of records showing that Claimant treated for many years for a number of different complaints that were worked up but never found to have an anatomical basis." (Rieger Dep., at 11; WCJ Decision at 53.) Accordingly, we reject this argument.

12

Dr. Manaker's testimony that Claimant did not suffer an injury or illness. Although Dr. Rieger and Dr. Manaker's opinions concerning Claimant's diagnosis may have conflicted, the WCJ's resolution of those opinions was within the WCJ's purview. We, therefore, reject Claimant's argument that the WCJ's credibility determinations regarding Dr. Rieger and Dr. Manaker are not reasoned.

Lastly, Claimant argues that her constitutional right to a fair trial was violated. Specifically, Claimant suggests that the lack of a translator affected her ability to understand the proceedings. She further contends that the WCJ allowed Employer's attorney to make decisions concerning evidence. Claimant, however, failed to raise these arguments before the Board. The Pennsylvania Rules of Appellate Procedure provide that "[n]o question shall be heard or considered by the court which was not raised before the government unit." Pa. R.A.P. 1551(a). This issue is, therefore, waived.

Accordingly, we affirm the Board's order.

P. KEVIN BROBSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lianqin Zhang,                  :
                Petitioner     :
                             :
         v.                 :    No. 2151 C.D. 2014
                             :
Workers' Compensation          :
Appeal Board (Penn State Milton    :
S. Hershey Medical Center and      :
Inservco Insurance Services),        :
             Respondents   :

## **O R D E R**


AND NOW, this 5th day of August, 2015, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.


                        _____
                        P. KEVIN BROBSON, Judge