Richard LeDONNE c/o Kathleen
LeDonne/Rocco L. LeDonne,
Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (Graciano
Corporation), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 2007.

Decided Aug. 13, 2007.

Publication Ordered Nov. 14, 2007.

Richard C. Levine, Pittsburgh, for petitioner.

Dale A. Cable, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI and LEAVITT, JJ.

OPINION BY Judge LEAVITT.

Rocco LeDonne (Claimant), by his guardian Kathleen LeDonne, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying his request for fatal claim benefits. In doing so, the Board affirmed the determination of the Workers' Compensation Judge (WCJ) that Claimant was not entitled to receive fatal claim benefits because the death of his father, Richard LeDonne (Decedent), did not occur in the course of Decedent's employment with Graciano Corporation (Employer). In this case we consider whether Employer met its burden of proving that Claimant was not entitled to benefits under the so-called "personal animus" exception.

The undisputed facts are as follows. Decedent worked for Employer at a construction job site in New York City. Because he lived in Pittsburgh, Decedent and a co-worker, Clayton Krause, roomed together at a Howard Johnson Motel in Parsippany, New Jersey during the work week. Sometime during the night of March 2, 1993, Decedent and Krause were shot and killed in their motel room.

Decedent's widow, Michele LeDonne, filed a fatal claim petition seeking benefits for herself and for her son, Claimant, who was born one month after his father's mur-

der.[1] In December 1998, after extended litigation, the WCJ granted Employer's request to dismiss the petition with prejudice for failure to prosecute. Claimant, through his guardian Kathleen LeDonne,[2] appealed the dismissal, arguing that the petition should have been dismissed only as to Michele LeDonne but not as to Claimant because Michele LeDonne was no longer his guardian. The Board agreed with Claimant, concluding that Employer had been given timely notice that Claimant would be seeking benefits. Accordingly, the Board remanded the matter to the WCJ.

At the commencement of the remand hearing, the WCJ announced that Claimant was entitled to a rebuttable presumption that Decedent, a traveling employee, was in the course of his employment when he was killed. Employer presented two defenses. First, it asserted that Decedent was killed by a third person for reasons personal to that third person and not related to Decedent's work, *i.e.* the "personal animus" defense. Second, it asserted that Decedent was not in the course and scope of his employment when he was killed because he was not furthering the interests of Employer at the time of death.

Employer presented the testimony of Lieutenant Gary Lee Denamen, formerly with the Morris County Prosecutor's Office, who was the lead investigator in the case of the murders of Decedent and Krause.[3] Lieutenant Denamen began his investigation on March 3, 1993, at the motel where Decedent was killed. Decedent was shot 4 or 5 times; Krause was shot once. Reproduced Record 186a (R.R. ——). Lieutenant Denamen inferred that Decedent, not Krause, was the intended target. The investigation then revealed that Decedent's wife, Michele LeDonne, was having an affair with a man named Frank McDonough. The following was also learned: Frank was at the hospital during Claimant's birth one month after Decedent was killed; Frank and Michele took a vacation to Florida together shortly after Claimant's birth; Michele received a large life insurance benefit that she used to purchase a house[4] in Bethel Park in August 1993 as well as two cars; and Michele and Frank took up residence together at the house in Bethel Park.

On May 3, 1995, Michele LeDonne and Frank McDonough were arrested at their Bethel Park home for the murders of Decedent and Krause. Lieutenant Denamen was on the scene shortly after the two were placed in handcuffs, and he helped search the home. Frank McDonough was tried and convicted in New Jersey Superior Court for both murders. Michele LeDonne testified against McDonough in exchange for a lesser sentence pursuant to a plea bargain. Decedent's family objected to the plea agreement because they felt that Michele was "part and parcel to [Decedent's] death," but they understood the

1. Clayton Krause's widow also filed a fatal claim petition, which was resolved through a compromise and release agreement between Employer and Mrs. Krause.

2. Kathleen LeDonne is Decedent's mother and Claimant's paternal grandmother. At some point after Michele LeDonne filed her fatal claim petition, her parental rights were terminated and Claimant was adopted by Kathleen LeDonne and her husband.

3. Due to the large number of witnesses, we will not include summaries of all testimony. We are including testimony that is most relevant to the issues on appeal and are omitting some duplicative testimony from certain witnesses.

4. Lieutenant Denamen explained that the house cost "a fair sum of money" considering that Michele did not have a job and Frank was self employed and working only intermittently. R.R. 243a.

importance of having her testify against Frank McDonough. R.R. 252a.

Detective Donald Dangler from the Morris County Prosecutor's Office testified that he transported Michele LeDonne to the police station upon her arrest on May 3, 1995. Detective Dangler later returned to help search Michele's home, which disclosed male clothing in a bedroom and a wallet belonging to Frank McDonough.

Detective Lee Torbin of the Allegheny County Police Department secured the arrest warrants for Michele LeDonne and Frank McDonough as well as the warrants authorizing a search of the Bethel Park home. Detective Torbin was present when Michele and Frank were arrested.

Employer presented testimony from William Knoll, an insurance agent. Mr. Knoll explained that at the end of January 1993, he sold a $500,000 life insurance policy on Decedent's life that named Michele LeDonne the beneficiary. Decedent was murdered 33 days after Mr. Knoll processed the insurance application.

Employer presented the testimony of Laura Witt, a nurse at Magee Women's Hospital who was responsible for Michele LeDonne's care during her labor and delivery of Claimant on April 3, 1993. Frank McDonough was present in the room during Michele's labor and Ms. Witt observed Frank and Michele interacting in an intimate way, including kissing on the lips and hugging. The hospital provides an identification bracelet for the mother to give to her "main support person" to provide access to the mother and the baby. R.R. 52a. Michele LeDonne gave her bracelet to Frank McDonough.

Linda "Ebony" Hughes, Michele's recovery room nurse, testified that Frank McDonough and Michele LeDonne acted in a way that she described as "typical for a new mom and a new dad or husband and wife, you know, partners. It was that kind of attentiveness." R.R. 70a.

Kathleen LeDonne, Decedent's mother, testified about a conversation that occurred on the Saturday before Decedent died. Decedent was crying and stated that something was wrong with his wife Michele. Kathleen did not understand Michele's demeanor after Decedent's murder because Michele acted as if nothing had happened. On June 5, 1993, Michele had a baptism party for Claimant, attended by Frank McDonough and some of his relatives. At the party, Kathleen witnessed Frank McDonough put his hand on Michele's backside, which offended Kathleen. In July or August 1993, Kathleen learned that Michele LeDonne and Frank McDonough were having an affair. Sometime later, Kathleen LeDonne became suspicious that Michele and Frank McDonough were involved in Decedent's death. Kathleen maintained regular contact with Lieutenant Denamen concerning the status of the investigation and provided the police with information. Kathleen testified at Frank McDonough's criminal trial and also gave a victim's statement at his sentencing.

Employer offered into evidence a certified copy of the New Jersey criminal court verdict against Frank McDonough that was rendered by a jury on November 4, 1997. Frank McDonough was found guilty of first degree murder in the deaths of Decedent and Krause; conspiracy to commit Decedent's murder; and possession of a firearm with the purpose to use it unlawfully against the person of another.

Employer also offered into evidence a certified copy of the New Jersey criminal court guilty plea colloquy of Michele LeDonne dated April 28, 1997. Michele LeDonne pleaded guilty to compounding the commission of the offense of murder by accepting or agreeing to accept pecuniary

benefit from Frank McDonough in exchange for not reporting information to the police about the murders of Decedent and Clayton Krause; hindering the apprehension of Frank McDonough for the murders of Decedent and Clayton Krause; and aiding Frank McDonough to profit from the murders by sharing life insurance proceeds with him. She was sentenced to prison for 10 years.

Claimant's counsel objected to the admission of the guilty verdict and the guilty plea colloquy. The WCJ overruled the objection and admitted them into evidence.

The WCJ found Kathleen LeDonne to be a reluctant but credible witness. The WCJ also accepted as credible the testimony of Lieutenant Denamen, Detective Torbin, Detective Dangler, Laura Witt, Ebony Hughes and William Knoll.[5] The WCJ found that Frank McDonough was convicted of Decedent's murder and took judicial notice that first degree murder requires deliberate and premeditated malice aforethought. The WCJ found that Michele LeDonne pled guilty to, *inter alia,* hindering the arrest of Frank McDonough. In explaining that the guilty verdict and guilty plea were each admissible, the WCJ also noted that they are a matter of public record.

Based on the evidence, the WCJ concluded that Claimant was not entitled to benefits because Decedent was murdered by Frank McDonough for personal reasons that had nothing to do with Decedent's employment. Based on the testimonial evidence, the WCJ found, as fact, that Michele LeDonne and Frank McDonough were having an affair and that Decedent was a barrier to their moving forward as a couple. The WCJ also found that Michele LeDonne had a pecuniary interest in her husband's demise, noting that she used the life insurance proceeds to purchase the house that she lived in with Frank and where the two were arrested. The WCJ specifically pointed out that her conclusion that the personal animus exception precluded an award to Claimant was not based solely on the criminal convictions. The WCJ explained that Employer also presented testimonial evidence from which she could reasonably infer that Frank and Michele's personal relationship and pecuniary interest in Decedent's death caused Decedent's death.[6]

Alternatively, the WCJ concluded that Claimant was not entitled to fatal claim benefits because Decedent was not killed in the course of his employment. She held that Decedent was not furthering Employer's business or affairs after he left the construction site, and the murder occurred late at night, well after Decedent had concluded his job duties for the day. This evidence rebutted the presumption the WCJ announced at the beginning of the hearing, *i.e.,* that Decedent was in the course of his employment when killed.

---

**5.** The WCJ is the ultimate determiner of credibility. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board (Krawczynski),* 9 Pa.Cmwlth.176, 305 A.2d 757, 760 (1973). The WCJ is free to accept, in whole or in part, the testimony of any witness. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703, 706 (Pa.Cmwlth.1995).

**6.** The WCJ noted that Claimant attempted to establish an alternative theory of the murders by asserting a work-related basis for murder as a result of alleged animosity that existed between Krause and a Mr. Baressi, who was the architect associated with the construction site. The WCJ rejected the alternative theory as not credible and found the suggestion that Mr. Baressi committed the murders to be "irresponsible and absurd given the totality of the evidence presented." WCJ Decision at 12, Finding of Fact 24.

Based on the foregoing, the WCJ denied Claimant's fatal claim petition. Claimant appealed, and the Board affirmed. In doing so, the Board determined that the certified copies of the guilty plea and guilty verdict were admissible in this case and that these court records, together with the other evidence, were more than sufficient to prove Employer's personal animus defense. Claimant now petitions for this Court's review.

On appeal,[7] Claimant contends that his fatal claim petition should have been granted for two reasons. First, Claimant argues that Employer failed to prove the defense of personal animus. In support, Claimant argues that: (1) Frank McDonough's New Jersey conviction for the first degree murder of Decedent was inadmissible hearsay; (2) McDonough's conviction did not have collateral estoppel effect in the workers' compensation hearing; (3) the admission of the conviction violated Claimant's due process rights; (4) Michele LeDonne's guilty plea was inadmissible hearsay; and (5) the WCJ's factual findings were not based on substantial evidence. Second, Claimant argues that Decedent was in the course and scope of his employment as a "traveling employee" at the time of his death.

We begin with a review of the law relating to a personal animus defense. Under the Workers' Compensation Act[8] (Act), an employer is generally liable for an injury or death of an employee that occurs in the course of his employment. However, Section 301(c)(1) of the Act provides, in relevant part, as follows:

The term "injury arising in the course of his employment," as used in this article, *shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him,* and not directed against him as an employe or because of his employment . . .

77 P.S. § 411(1) (emphasis added). Thus, an injury is not compensable under the Act if it was caused by an act of a third person who intended to injure the employee for reasons personal to the assailant. The burden of proving such intent rests with the employer. *Helm v. Workmen's Compensation Appeal Board (U.S. Gypsum Co.),* 139 Pa.Cmwlth.587, 591 A.2d 8, 10 (1991).

We turn, then, to Claimant's assertion that Frank McDonough's conviction and Michele LeDonne's guilty plea were not properly admitted into evidence. Claimant acknowledges that these records are admissible under the Federal Rules of Evidence. However, in Pennsylvania, convictions and guilty pleas are admissible under the Pennsylvania Rules of Evidence only where used against the guilty party. Because Claimant is not the guilty party, the verdict and plea should have been denied admission as hearsay.

Federal Rule of Evidence 803(22) provides, in relevant part, an exclusion from the hearsay rule for court judgments. It states, in relevant part, as follows:

Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of *nolo contendere),* adjudging a person guilty of a crime punishable by death or imprisonment in

---

**7.** This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error

of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

**8.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

excess of one year, *to prove any fact essential to sustain the judgment,* but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. . . .

FED.R.EVID. 803(22) (emphasis added). The Pennsylvania Rules of Evidence do not include this particular exclusion from the hearsay rule. However, as found by the Board, it is well-settled that workers' compensation judges are not bound by either common-law or statutory rules of evidence. Indeed, the traditional rules of evidence are to be relaxed in workers' compensation proceedings. *Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products),* 580 Pa. 470, 485, 861 A.2d 938, 947 (2004). ▮ The rationale for allowing the New Jersey court records to come into evidence in a case such as this was explained by the Board as follows:

Rather the rules [of evidence in workers' compensation proceedings], by statute, are more relaxed. *In keeping with this legislative mandate, we determine that evidence admissible under Federal Rule of Evidence 803(22) may be admissible in a workers' compensation case to prove personal animus.* In our view, it would be contrary to the relaxed rules to expect an employer to effectively re-try an out-of-state murder and related criminal cases before a WCJ to take advantage of the personal animus exception allowed by Section 301(c)(1).

Board Opinion at 7–8 (emphasis added). We agree that the Board can adopt its own rules of evidence. Here, it admitted a certified copy of a court's record of a conviction, which is the best evidence of a conviction. *See, e.g., Commonwealth v. Strickland Transportation Corp.,* 30 Pa. Cmwlth. 463, 373 A.2d 1188, 1190 (1977) (noting that a record of conviction is the best evidence that someone has been convicted of a crime). The guilty verdict and the guilty plea are official documents of the New Jersey court system, and pursuant to 42 Pa.C.S. § 6103, an official record kept by a court is admissible in the form of a copy accompanied by a certificate regarding legal custody of the record.[9] In short, the Board did not err in concluding that the New Jersey court records were properly admitted into evidence.

We turn next to Claimant's assertion that the admission of Frank McDonough's guilty verdict violated Claimant's due process rights and the collateral estoppel doctrine. The gravamen of this argument is that because Claimant was not a party to the New Jersey trial and did not have a full and fair opportunity to confront any of the witnesses, the guilty verdict cannot be used against him in the workers' compensation proceedings. Claimant contends that without Frank McDonough's conviction and Michele LeDonne's guilty plea, "Employer can produce no evidence whatsoever placing Frank McDonough at the Howard Johnson Motor Lodge on March 3, 1993 and cannot therefore prove he was involved in Richard LeDonne's murder." Claimant's brief at 16.

▮ This is an incorrect statement of Employer's burden of proof. Employer needed only to produce evidence to show that Decedent was killed for reasons unrelated to his work. The judgment of the

9. Claimant also argues that the guilty plea was inadmissible hearsay because there is no evidence that Michele LeDonne was unavailable to testify in this case. Under Federal Rule of Evidence 803(22), a guilty plea is admissible even if the declarant is available as a witness. Therefore, it is irrelevant whether Michele LeDonne was available to testify in this case.

New Jersey criminal court was admitted to show that the death of Decedent was not accidental and that another individual had been convicted for Decedent's death. The other evidence in the record supported the inference that the reasons for the murder were personal to the convicted assailant and had nothing to do with the workplace. Claimant's description of this other evidence as "meager and incompetent" is not borne out by the record. The testimony from Kathleen LeDonne, Lieutenant Denamen, William Knoll, Laura Witt and Ebony Hughes, among others, supported the finding that Michele LeDonne and Frank McDonough were involved in an affair; that Michele LeDonne had a pecuniary interest in Decedent's demise; and that both were complicit in Decedent's untimely death. A workers' compensation judge is permitted to make reasonable and logical inferences based on circumstantial evidence. *Armak–Akzona v. Workmen's Compensation Appeal Board (Naylor)*, 149 Pa.Cmwlth.543, 613 A.2d 640, 642 (1992). That is precisely what the WCJ did in this case to make the findings necessary to conclude that Employer proved its personal animus defense.

In summary, Employer, through the guilty verdict and guilty plea, and through the credible testimonial evidence, proved that Decedent was killed by Frank McDonough for reasons personal to Frank McDonough and not for any reason related to Decedent's employment. As such, Claimant is not entitled to an award of fatal claim benefits in this tragic case. We are sympathetic to Claimant's situation, but we are constrained to conclude that the WCJ did not err in denying Claimant's fatal claim petition and the Board did not err in affirming the WCJ's decision and order.

For these reasons, the Board's order is affirmed.[10]

### ORDER

AND NOW, this 13th day of August, 2007, the order of the Workers' Compensation Appeal Board dated August 3, 2006, in the above captioned case is hereby AFFIRMED.

---

**10.** Based on our disposition of the case, we will not address Claimant's argument that the WCJ erred in denying the fatal claim petition on the basis that Decedent was not in the course and scope of employment when he was killed because he was not furthering Employer's interests at the time.