IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BC Food Market,                :
                                        : No. 2100 C.D. 2015
              Petitioner      : Argued: October 17, 2016
                                          :
           v.                    :
                                          :
Workers' Compensation Appeal     :
Board (Shah Mahar-Ullah and        :
Uninsured Employer Guaranty Fund),  :
                                          :
            Respondents   :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: January 31, 2017

BC Food Market (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) awarding benefits to Shah-Mahar-Ullah (Claimant).[1] We affirm.

On May 28, 2008, shortly after closing Employer's store, Claimant was sitting in his supervisor's car, which was parked outside Employer's business,

---

[1] The order appealed from was rendered by the Board on February 27, 2014, and made final by the Board's order of October 8, 2015. *See Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1287 (Pa. Cmwlth. 2000) (holding that when the Board remands a case to a workers' compensation judge and a new decision is issued, a party must follow normal procedure and appeal to the Board before seeking review from this Court).

and was shot by unknown assailants. Claimant filed claim petitions against Employer, which is uninsured, and the Uninsured Employer Guaranty Fund (UEGF),[2] alleging that he was totally disabled as a result of a work-related injury. Employer responded that Claimant was not in the course and scope of his employment when he was injured and raised the affirmative defense of personal animus.[3] After the defendants filed answers, the parties requested that the matter be bifurcated to first address the issue of whether Claimant was in the course of his employment at the time of his injury.

Claimant and Employer's co-owner, Mohammed Rahman, testified by way of deposition. The WCJ summarized Claimant's testimony as follows. Claimant, who was born in Bangladesh, first worked for Rahman in 2003 as a cashier at Enterprise Gas Station and subsequently became a cashier and manager with Employer. Claimant's duties included operating the cash register, paying for deliveries with company checks, and supervising another employee, Mohammed Mojalm Hussein. Claimant worked from 1:00 p.m. to 11:00 p.m., six days a week, for $8.00 an hour. He was paid approximately $1,200.00 in cash every two weeks regardless of how many hours he actually worked. WCJ's Findings of Fact, June 30, 2010, (FF) No. 1.

---

[2] UEGF is a separate fund in the state treasury, established in Section 1602 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of November 9, 2006, P.L. 1362, 77 P.S. §2702, for the exclusive purpose of paying workers' compensation benefits due to claimants and their dependents where the employer liable for the payments was not insured at the time of the work injury.

[3] An injury "caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment," is excluded from "the course of employment" by Section 301(c )(1) of the Act, 77 P.S. §411(1).

2

At the relevant time, Employer had a shoplifting problem. There were sixteen surveillance cameras at the store, twelve indoors and four outside, and customers had been seen putting items in large purses. Claimant had called the police on many occasions. *Id.*

On May 24, 2008, Claimant watched a woman on a surveillance camera and saw her place several items in a large purse. He stopped the woman and called the police, who found the items in the woman's purse and took her to the police station. The woman and her family were regular customers at the store, and, shortly after the incident, eight to ten of the woman's relatives came to the store, kicked the door, and told Claimant that they would watch how he went home on the bus after the store closed. The family members returned the following day and threatened Claimant again. Instead of taking the bus home on those two nights, Claimant stayed in an apartment with Rahman's brother-in-law. *Id.*

On May 26, 2008, Rahman helped Claimant close the store and offered him a ride home. Hussein was already in the car. The store does not have a parking lot, and the car was parked on the street in front of the store's door. After Claimant got in the passenger seat, two people with their faces covered stood in front of the car and started shooting. Claimant was shot multiple times, and he awoke in the hospital four or five days later. He was released from the hospital on July 8, 2008. At the time of his June 22, 2009 deposition, Claimant was still undergoing medical treatment for his injuries, and Employer had not paid compensation for wage loss or medical benefits. *Id.*

Rahman's account differed. Rahman testified that he offered Claimant a ride home that night because buses were running on a limited holiday schedule. He estimated that his car was parked twenty to thirty feet from the door

3

of the store. He said that the car had already moved about ten feet when two men began running toward the car and shot at the three occupants. Claimant and Rahman were both shot; Rahman was able to drive to the emergency room. According to Rahman, Claimant said at the time that he did not believe the shooting was related to the shoplifting incident, and he told Rahman that he was having domestic problems. FF No. 2. Rahman acknowledged that one of the assailants moved around to his side of the car and that the assailants shot at him as well as Claimant. FF No. 4.

On February 24, 2010, Claimant testified before the WCJ with the assistance of an interpreter. He stated that Rahman's car was not twenty to thirty feet from the store but was right in front of the door. Claimant did not know who the assailants were. He said he believed they were related to the woman whom he caught shoplifting because her relatives had threatened him on the two previous days and he had no enemies. He denied telling Rahman that he thought the shooting was related to marital problems. FF No. 3.

The WCJ credited Claimant's testimony and rejected the testimony of Rahman where it conflicted with Claimant's version of events. The WCJ noted that Employer did not submit evidence from the surveillance cameras, that Rahman's testimony was inconsistent, and that Rahman admitted that the assailants shot at both him and Claimant, with one of them moving around to Rahman's side of the car. FF No. 4.

The WCJ stated that the shooting of both men, rather than just Claimant, supported Claimant's testimony, and he found that the incident occurred in retaliation for the shoplifting arrest. The WCJ also observed that while

4

Employer bore the burden of proving personal animus as an affirmative defense, Employer offered no evidence on that issue.

The WCJ found that the incident occurred only minutes after Claimant left work and that the public street was part of Employer's premises because it was the means of entrance and exit from the store. The WCJ further found that Claimant's injury was not the result of personal animosity but instead was related to the May 24, 2008 shoplifting incident. FF Nos. 4-6. Accordingly, the WCJ concluded that Claimant was in the course and scope of his employment when he was injured. By order dated June 30, 2010, the WCJ granted Claimant's claim petition "within the confines of the requested bifurcation." WCJ's June 30, 2010 decision, p. 6.

Both parties appealed to the Board, which dismissed the appeals as interlocutory and remanded the matter for the WCJ to take evidence and make findings of fact and conclusions of law on the merits of the claim petition. In a footnote, the Board stated that it agreed with the WCJ's determination that Claimant was injured in the course of his employment. Board's decision, July 20, 2011.

On remand, the WCJ considered evidence concerning the nature of Claimant's work injuries and the extent of his disability. The WCJ granted the claim petition in a June 6, 2012 decision and order, and Employer appealed. The Board specifically affirmed the WCJ's conclusion that Claimant was injured in the course of his employment when he was shot on May 26, 2008, but agreed with Employer that the WCJ did not make necessary findings regarding the description of Claimant's work injury. By order dated February 27, 2014, the Board affirmed the WCJ's determination that Claimant was injured in the course of his

5

employment and remanded for specific findings regarding the description of Claimant's work injuries.

On remand,[4] WCJ Lawrence reviewed the evidence credited by WCJ Lorine and issued specific findings as to the diagnoses related to Claimant's work injury.[5] The WCJ's decision of April 23, 2015, noted that the undisturbed findings, conclusions of law, and orders previously issued remained in effect.

Employer appealed. Employer did not challenge the description of the injury but asked for an order making the Board's prior opinion of February 27, 2014, final and appealable. The Board granted the request by order dated October 8, 2015.

---

[4] The Board's remand of February 27, 2014 was assigned to WCJ Geoffrey Lawrence, following the retirement of WCJ Carl Lorine.

[5] The WCJ found that Claimant suffered the following as a result of the work injury:

> a) right brachial plexopathy;
> b) multiple gunshot wounds: right chest, right humerus, left thumb;
> c) liver laceration;
> d) chest wall pain secondary to multiple gunshot/surgical procedures including 5th right rib resection;
> e) emphysema requiring chest tube/chest tube thoracostomy;
> f) laceration right upper extremity;
> g) open fracture left thumb secondary to gunshot;
> h) bilateral ductal disruption requiring bilateral stent placement (6/15/2008-12/02/2008);
> i) shortness of breath/dyspnea secondary to chest wall pain;
> j) adjustment disorder with major depression features/aggravation of pre-existing depression;
> k) abdominal disfiguring scar formation and ventral incisional hernia status post abdominal laporatomy procedure (5/26/2008).

WCJ's decision, April 23, 2015, FF 9, 25.

6

On appeal to this Court,[6] Employer argues that the Board erred in affirming the WCJ's determination that Claimant's injuries occurred in the course and scope of his employment.[7] Whether a claimant's injury occurred in the course of his employment is governed by Section 301(c)(1) of the Act, which states:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition . . . arising in the course of his employment and related thereto . . . . The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and *shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.*

---

[6] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[7] By way of a single-judge memorandum and order dated January 5, 2016, Employer's request for supersedeas was denied.

77 P.S. §411(1) (emphasis added). Thus, under Section 301(c)(1), an injury will be found compensable where the employee, although not actually working, is on the premises under the employer's control; is required by the nature of his employment to be there; and sustains injuries as a result of the condition of the premises or the operation of the employer's business. *Workmen's Compensation Appeal Board (Slaugenhaupt) v. U.S. Steel Corporation*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977).

Citing *Mansfield Brothers Painting v. Workers' Compensation Appeal Board (German)*, 72 A.3d 842 (Pa. Cmwlth. 2013), Employer argues that the facts of this case fall under the "coming and going" rule, the principle that employees generally are not eligible for benefits when they are commuting to or from work. Employer asserts that Claimant admittedly had finished work for the day and was not furthering Employer's business when he was shot. Relying on *Waronsky v. Workers' Compensation Appeal Board (Mellon Bank)*, 958 A.2d 1118 (Pa. Cmwlth. 2008), and *Ortt v. Workers' Compensation Appeal Board (PPL Services Corp.)*, 874 A.2d 1264 (Pa. Cmwlth. 2004), Employer also contends that the WCJ erred in determining that the location of the injury - the public street – was part of Employer's "premises." Finally, Employer argues that the WCJ's finding that Claimant was injured as a consequence of the shoplifting incident is not supported by substantial evidence.

In response, Claimant relies on *Kandra v. Workmen's Compensation Appeal Board (Hills Department Store)*, 632 A.2d 1069 (Pa. Cmwlth. 1993), and *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board (Kurta)*, 423 A.2d 792 (Pa. Cmwlth. 1980), and argues that an employee does not have to be on

8

the clock for his injury to be in the course of his employment so long as he is on the premises at a reasonable time before or after his shift.[8]

Further, Claimant relies on *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 997 (Pa. Cmwlth. 2010), *Allegheny Ludlum Corp. v. Workers' Compensation Appeal Board (Hines)*, 913 A.2d 345 (Pa. Cmwlth. 2006), and *Williams v. Workers' Compensation Appeal Board (City of Philadelphia)*, 850 A.2d 37 (Pa. Cmwlth. 2004), to argue that an employer's premises includes reasonable means of access to the workplace. Claimant also asserts that the WCJ's finding that the incident was in retaliation for the shoplifting arrest of a female customer is supported by Claimant's credible testimony that (1) the customer's family came to the store on two separate occasions and threatened him; and (2) one of the assailants moved to Rahman's side of the car to shoot him, which negated Employer's assertion of personal animus against Claimant.

Whether an employee is injured in the course of his employment is a question of law to be decided based on the WCJ's findings of fact. *Mansfield Brothers Painting*, 72 A.3d at 845. Having reviewed the cases cited by Employer, we conclude that they are factually distinguishable from the matter before us.

In *Mansfield*, the claimant was a union painter assigned to work for an employer painting dormitory rooms at the Quadrangle Building on the University of Pennsylvania campus. The claimant fell as he was walking from the

---

[8] As noted in *Kandra*, "we have consistently held that even though not actually engaged in the employer's work, an employee will be considered to have suffered an injury in the course of employment if the injury occurred on the employer's premises at a reasonable time before or after the work period." 632 A.2d at 1071 n.2 (citing *Brind Leasing Corp. v. Workmen's Compensation Appeal Board (Dougherty),* 584 A.2d 1102 (Pa. Cmwlth. 1990), and *Fashion Hosiery Shops*).

9

Quadrangle Building to the train station after work. At the time, he was about 150 feet from the Quadrangle Building on a walkway owned by the university. The Board affirmed the WCJ's decision that the claimant was injured in the course of his employment, reasoning that he was on the employer's premises when he fell and that a condition of the employer's premises, an uneven walkway, contributed to the work injury. In reversing, we explained that the "premises" in that case encompassed only the employer's work site, and that when the claimant fell, he was on the university's premises, but not the employer's.

The claimant in *Waronsky* worked for Mellon Bank (employer) at a service center located at Sixth Avenue in downtown Pittsburgh. The employer administered a transportation program under which employees were reimbursed for parking and public transportation. The claimant parked in the Mellon Garage, on the opposite side of Sixth Avenue. She was injured while she was crossing the four-lane street and was struck by a motorist. Noting that employees were not required to park at the Mellon Garage but were free to park wherever they desired or to use public transportation, we concluded that neither the garage nor Sixth Avenue was an integral part of the employer's premises. Therefore, we held that the claimant was not injured in the course of her employment.

In *Ortt,* the claimant left work, walked approximately one block to the lot where her car was parked, and was injured when she slipped on ice. The employer did not own the parking lot, although it gave employees the opportunity to rent spaces there at a reduced cost. This Court affirmed the WCJ's conclusion that the lot was not so connected with the employer's business as to be an integral part of that business. We reasoned that the claimant was not required to park there;

10

the injury occurred on property that was owned and operated by a private entity; and the private entity, not the employer, was responsible for maintaining the lot.

In contrast to facts of those cases, here the WCJ found that Rahman's car was parked on the public street in front of Employer's store, which area was a reasonable means of access and exit from the workplace, and Pennsylvania courts have repeatedly held that an employer's "premises" includes reasonable means of access to the situs of an employer's business. *See, e.g., Epler v. North American Rockwell Corporation*, 393 A.2d 1163 (Pa. 1978); *ICT Group*; *Newhouse v. Workmen's Compensation Appeal Board (Harris Cleaning Service, Inc.)* 530 A.2d 545 (Pa. Cmwlth. 1987).

In *ICT Group*, the claimant worked in an office park where the employer leased multiple buildings. The claimant regularly parked her car in a parking lot situated between her workplace and another building leased by the employer. The claimant was walking to her car during her lunch break when she slipped on ice and fell. The WCJ concluded that the claimant sustained her injuries on the employer's premises while in the course and scope of her employment, and the Board affirmed. On appeal, the employer argued that the parking lot was not part of its premises, noting that: it neither owned nor leased the parking lot; it shared the parking lot with other tenants of the office park; employees' use of the parking lot was optional; and employees had a number of public transportation options at their disposal.

We held that the parking lot was an integral part of the employer's business and, thus, part of the employer's premises, because it was a reasonable means of access to the claimant's workplace. We explained that "[i]t is well established in Pennsylvania that 'any injury occurring to an employee up until the

11

time he leaves the premises of the employer, provided that it is reasonably proximate to work hours, is compensable.' The rationale behind this rule is that 'once an employee is on the [e]mployer's premises, actually getting to or leaving the employee's work station is a necessary part of that employee's employment.'" *ICT Group*, 995 A.2d at 932 (quoting *Allegheny Ludlum*, 913 A.2d at 349).

In this case, the WCJ found that the injury occurred right after Claimant and Rahman closed the store, as Claimant was leaving work, and at a location that was a reasonable means of access and egress to Employer's store. The WCJ's findings in this regard are supported by substantial evidence,[9] and based on these findings, the WCJ properly concluded that Claimant was injured in the course of his employment.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

---

[9] Employer complains that the WCJ's finding that the shooting was related to the shoplifting incident is not supported by substantial evidence. We have repeatedly held that a WCJ's authority over determinations of witness credibility and evidentiary weight includes the prerogative to make reasonable inferences based on circumstantial evidence. *LeDonne v. Workers' Compensation Appeal Board (Graciano Corp.),* 936 A.2d 124, 131 (Pa. Cmwlth. 2007); *Armak-Akzona v. Workmen's Compensation Appeal Board (Naylor),* 613 A.2d 640, 642 (Pa. Cmwlth. 1992).

Additionally, we agree with the Board that in light of the circumstances and, in particular, Employer's failure to prove personal animus, the WCJ's finding that Claimant was injured as a consequence of the shoplifting incident is irrelevant.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BC Food Market,                      :
                                              : No. 2100 C.D. 2015
                    Petitioner      :
                                                :
                     v.               :
                                                :
Workers' Compensation Appeal      :
Board (Shah Mahar-Ullah and       :
Uninsured Employer Guaranty Fund),   :
                                                :
                  Respondents   :


O R D E R


AND NOW, this 31st day of January, 2017, the order of the Workers'
Compensation Appeal Board, dated October 8, 2015, is affirmed.


_____
MICHAEL H. WOJCIK, Judge