IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nicole Whitaker, | : | |
| Petitioner | : | |
| | : | No. 40 C.D. 2020 |
| v. | : | |
| | : | Submitted: June 26, 2020 |
| Workers' Compensation Appeal | : | |
| Board (DNA Central, Inc. d/b/a | : | |
| Dedicated Nursing Associates, Inc.), | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED: January 11, 2021

Nicole Whitaker (Claimant) petitions for review from the December 24, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying her claim petition. Upon review, we affirm.

**Background**

The relevant factual and procedural history of this case are as follows. On August 21, 2016, Claimant was employed as a home health aide by Dedicated Nursing Associates, Inc. (Employer) and allegedly sustained injuries to her jaw and neck, and pain in her shoulders, when she was assaulted by her nephew while providing home health care for her father. On October 17, 2016, Employer issued a

Notice of Compensation Denial, denying that Claimant suffered a work-related injury, including an aggravation of a preexisting condition, as a result of her employment. On November 17, 2016, Claimant filed a claim petition under the Workers' Compensation Act (Act),[1] seeking temporary, total disability benefits, payment for medical expenses, and an award of counsel fees. In turn, Employer filed an answer denying the material allegations in the claim petition and raising affirmative defenses, including the personal animosity exception. (Findings of Fact (F.F.) Nos. 1, 2, 5.c.)

On February 14, 2017, the WCJ convened a hearing at which Claimant offered the following testimony. Claimant was employed as a licensed practical nurse (LPN) with Employer since February 2015. In early August, Claimant started working as a home health aide because her older sister, Donna Carey, called Employer and requested that Claimant be assigned to take care of their ailing father, who was suffering from end-stage chronic obstructive pulmonary disease. (F.F. No. 5.a.-b.) On August 21, 2016, Claimant was working as a home health aide for her father. At approximately 9:00 p.m., Claimant was watching television downstairs, while her parents were upstairs in the bedroom area, when her nephew, Brandon Barr, entered the residence. Brandon Barr punched Claimant on the left side of her jaw, grabbed her around the neck and started choking her and "slammed [Claimant] in [her] head and neck." (F.F. No. 5.b.) After the assault had ended, Claimant ran home, called the police and paramedics, and later reported her injuries to Employer, stating that she was physically attacked while working and suffered injuries to her jaw, neck, and shoulders. The paramedics arrived at Claimant's house and advised

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

2

her that she had no broken bones. (F.F. No. 5.c.) There is no evidence to suggest that the paramedics transported Claimant to a hospital at that time.

Following the August 21, 2016 incident, Claimant continued working as an LPN, but "called off a lot." Approximately three to four weeks after the assault, Claimant visited her primary care physician, Robert Scalia, M.D., and, thereafter, she informed Employer that she could no longer work due to pain in her neck and shoulders. After conducting a physical examination, Dr. Scalia referred Claimant to a neurosurgeon at Hershey Medical Center, George Rung, M.D., who treated Claimant with medicinal injections to manage her pain. Claimant stated that she could not perform her position as an LPN because her neck injury prevented her from performing the physical duties associated with the job. Claimant also denied having palpable problems with her neck or receiving medical treatment for her neck prior to August 21, 2016. However, Claimant experienced an accident when she was younger and, as a result, developed back and upper shoulder problems. Approximately 15 years before the incident at issue, in 2001, Claimant underwent physical therapy for her neck and shoulder area and she has experienced occasional stiffness in both her neck and shoulder area since that time. (F.F. No. 5.d.-e., f. g.-h., l., n.)

On cross-examination, the following testimony was elicited from Claimant. Her daughter, Mariah Whitaker, was also retained by Employer to work as an LPN with Claimant and to assist with caring for Claimant's father. Brandon Barr was 24 years old at the time of the assault; Claimant helped raise him as a child because his mother, Kimberly Barr (Claimant's sister), worked full time; and Claimant did not know of any reason why Brandon Barr would assault her. Kimberly Barr was also present at the assault. On August 21, 2016, an altercation between Claimant, Kimberly Barr, and Brandon Barr ensued at Claimant's parents' house.

3

Subsequently, the family members exchanged arguments and threats, with a variety of allegations pertaining to inappropriate behavior in the past, and they eventually filed criminal charges against each other. (F.F. Nos. 5.i.-j., 6.b.-e., g.-h.)[2]

In support of her claim petition, Claimant also submitted the deposition testimony of Daniel M. Lorenzo, M.D., who is board certified in anesthesiology and pain medicine. Dr. Lorenzo first treated Claimant on April 5, 2017, and, thereafter, saw her on a monthly basis. Dr. Lorenzo stated that Claimant informed him that after she was assaulted by Brandon Barr on August 21, 2016, she immediately developed pain in the left side of her jaw and neck, which radiated into the back of her head and into her shoulder blades, and that, at the time of the initial doctor visit, she continued to suffer from neck pain. During his medical evaluation and treatment, Dr. Lorenzo examined Claimant, reviewed an MRI report, conducted left-sided medial branch blocks, and performed a left side C4-5, C5-6, and C6-7 facet joint medial branch rhizotomy.[3] Dr. Lorenzo last saw Claimant on December 7, 2017, and reviewed additional records and testimony prior to the date of his deposition. (F.F. Nos. 7-8.)

Ultimately, when asked what injury Claimant suffered at work in August 2016, Dr. Lorenzo opined as follows:

> I don't know much about the mechanism of injury but I do know that she had no preexisting neck pain prior to the injury. I do know from her MRI that she had some preexisting degenerative changes and I believe that her pain was secondary to these preexisting degenerative changes.

---

[2] The specific details of the familial strife need not be repeated here because they are unnecessary to our resolution of this case.

[3] According to a medical dictionary, a "rhizotomy" is a surgical procedure performed on a "section of the spinal nerve roots for the relief of pain or spastic paralysis." Stedman's Medical Dictionary 1360 (25th ed. 1990).

4

[The injury] was an exacerbation of the cervical spondylosis or arthritis in her neck that was exacerbated by the injury.

(F.F. No. 9.) At the time of this deposition, Dr. Lorenzo stated that Claimant continues to suffer an exacerbation to her neck and that she has not fully recovered from her work injury. *Id.*

On cross-examination, Dr. Lorenzo conceded that he did not review Claimant's medical records from Orthopedics Associates of Pottsville from September 1, 2011, through November 29, 2011, or records from a physician that had treated her in the past, and stated that he only had a few records from Dr. Scalia. Dr. Lorenzo also admitted that he "briefly read" Claimant's testimony on the morning of his deposition. (F.F. No. 10.) Further, Dr. Lorenzo acknowledged that Claimant's MRI displayed preexisting findings and that he was unaware that Claimant was in a motor vehicle accident in September or October 2016. Dr. Lorenzo agreed that a motor vehicle accident could exacerbate a preexisting neck problem. He was unaware that Claimant had worked unrestricted for two months after her incident at work. (F.F. No. 11.)

Upon re-direct examination, Dr. Lorenzo did not recall reviewing any medical records that mentioned that Claimant had preexisting neck pain. Dr. Lorenzo testified that Claimant stated that she did not have neck pain prior to the work-related incident. On re-cross examination, Dr. Lorenzo testified that his records indicated that the first time Claimant received treatment for a neck problem was on December 5, 2016, while she was under his care. (F.F. Nos. 12-13.)

In rebuttal, at a hearing held on December 5, 2017, Employer presented the testimony of Nicole Newhart, a branch manager who oversees three offices, including Employer's Reading and York offices where Claimant worked. (F.F. No. 14.a.) Newhart stated that on July 16, 2016, Claimant started a home care assignment

5

for her father, who was a client of Employer, and worked with her daughter, Mariah Whitaker, taking turns with shifts. According to Newhart, Claimant and Mariah Whitaker called the office numerous times on Saturday, August 20, 2016, and left messages stating that they were having family issues. Newhart called back and advised Claimant "to keep the family issues outside of work time" and emphasized "that [Employer] was only concerned that the client was being cared for and that both employees were doing their jobs productively." (F.F. No. 14.e.) Newhart testified that the next day, Claimant called her and reported that the family was verbally harassing her; Newhart, in turn, told Claimant that she could finish the shift or be removed from the assignment; and, in response, Claimant said that she would stay and care for her father until 1:00 a.m. that night. (F.F. No. 14.f.)

In addition, Newhart explained that, on August 21, 2016, around 9:00 p.m. or 9:30 p.m., Claimant called her and reported that she was assaulted by her nephew. Particularly, Claimant stated that she was injured; that the police and ambulance were at her house; and that she would call back after they left. Newhart testified that Claimant called back around 10:00 p.m. and stated that the police and ambulance had left. (F.F. No. 14.f.-g.) However, according to Newhart, Claimant did not provide any information pertaining to her injuries or the details surrounding the incident and Claimant only stated that "she was just a little worked up about everything." (F.F. No. 14.g.) During their call, Newhart advised Claimant that she needed to provide documentation regarding the incident and to follow up with the human resources department, but she did not receive anything from Claimant. (F.F. No. 14.g.-h.) Meanwhile, Newhart said that she received a phone call from Claimant's parents' house, asking that Claimant not return, and Employer subsequently removed Claimant from the assignment. Newhart added that following

the incident on August 21, 2016, Claimant performed long-term care facility work with no restrictions and, from the date of the incident until the last day of her employment, Claimant never presented any work restrictions or indicated that she was unable to work. (F.F. No. 14.i.)

Newhart further explained that Claimant had "call off" issues before the incident and described multiple instances in July and August 2016 where Claimant failed to attend work, did not call off, and/or performed her work in an unsatisfactory manner. (F.F. No. 14.d.) On September 12, 2016, Employer placed Claimant on probation. Newhart testified that on September 19, 2016, Claimant called and stated that she was unable to attend her shift because there was a car accident. After Claimant called to cancel her shift on September 22, 2018, to go "house hunting," Employer terminated her for attendance problems. (F.F. No. 14.j.-n.)

Upon cross-examination, Newhart reiterated that Claimant never informed her that Claimant's neck hurt or that she had a headache. Newhart noted that she was not aware of Claimant receiving any treatment with Dr. Lorenzo or any other provider after the incident on August 21, 2016. Newhart added that Claimant never told her the type of injury that she experienced on August 21, 2016. (F.F. No. 15.p.)

Employer also offered, by deposition, the testimony of Robert W. Mauthe, M.D., who is board certified in physical medicine and rehabilitation, electrodiagnostic medicine, independent medical examinations, and impairment rating evaluations. Dr. Mauthe performed an Independent Medical Evaluation (IME) of Claimant on March 2, 2017, during which he obtained Claimant's history, reviewed Claimant's medical records and diagnostic studies, and performed a

7

physical examination. Dr. Mauthe also reviewed Claimant's hearing testimony, as well as the deposition of Dr. Lorenzo. (F.F. No. 16.) Further,

17. Dr. Mauthe reviewed Claimant's cervical MRI performed on December 2, 2016, "which just revealed some degenerative changes, no evidence of any kind of trauma, anything like that." Dr. Mauthe opined that at the time of his IME, "[Claimant] did not have any residuals that [he] would attribute to an injury sustained on 8-21-16." Dr. Mauthe also opined [that] based upon his review of records, physical examination, and review of imaging studies, "that there was no evidence of any aggravation of any preexisting condition. That is to say, there was no substantial and material change." Dr. Mauthe did not "find that there was an exacerbation based upon the medical records." He did not believe the medical records substantiated [an exacerbation], since he did not see any medical records contemporaneous with the incident on August 21, 2016, until approximately thirty days later, when Claimant treated with her family physician, Dr. Scalia. Dr. Mauthe further opined that "[e]ven assuming [Claimant] had an exacerbation for a period of time, [it was his] opinion that at least at the time of [his] evaluation she had fully recovered." Dr. Mauthe [stated] that Claimant's neck treatment starting in December 2012 was not related to the incident in question, as he noted that [the treatment] consisted of "basically arthritic facet injections, . . . for her long-standing preexisting condition." Finally, Dr. Mauthe opined that he would not have disabled [Claimant] at any time based on the altercation.

18. Upon cross-examination, Dr. Mauthe acknowledged that Claimant could have sustained an exacerbation of her preexisting condition, as he believed her alleged "mechanism of injury is sufficient to cause an exacerbation." Dr. Mauthe clarified that "[he could not] go as far as to say [that Claimant] had an aggravation," as he "would need some kind of x-ray imaging, EMG study, spasm or material increase in her medication, something that would define change."

8

19. Dr. Mauthe admitted that he was not aware of Claimant receiving a cervical injection prior to the incident. He acknowledged that he only saw Claimant one time approximately six months after the incident.

20. Upon re[-]direct examination, Dr. Mauthe reaffirmed his opinion that if Claimant had an exacerbation, she had fully recovered, although he believed that her neck was not injured in the incident. He believed that "[Claimant] has preexisting arthritis" and stated [that he] did not see any doctor restrict Claimant from returning to gainful employment after the incident during his review of the records.

(F.F. Nos. 17-20.)

On the evidence presented, the WCJ found the testimony of Claimant to be credible, in part, namely "[t]o the extent that Claimant testified that an incident occurred at work on August 21, 2016, wherein she was attacked by her nephew." (F.F. No. 21.) However, the WCJ "reject[ed] Claimant's testimony that she suffered a cervical injury because of the attack on August 21, 2016; that she suffered disability because of a work-related neck injury; and that she missed work prior to her termination of employment due to her work injury." *Id.*

More specifically, in rejecting Claimant's testimony in the above-mentioned regards, the WCJ found that it was not credible for the following reasons: "(a) Claimant failed to offer any records relative to the treatment she received with paramedics on August 21, 2016, to corroborate her alleged injuries"; "(b) Claimant continued working full duty without restrictions and did not seek treatment until she went to her family physician after her employment was terminated approximately thirty days after the work injury"; "(c) Claimant initially denied that she had problems with her neck or received medical treatment for her neck prior to August 21, 2016," and "[s]he subsequently admitted during cross-examination that she experienced prior problems affecting her upper shoulders and neck and that she

9

previously had physical therapy on her neck prior to her alleged work injury"; and "(d) Claimant's testimony was [undermined] by the credible testimony of [] Newhart and contemporaneous records," which "contradict[ed] Claimant's testimony that she reported ongoing neck complaints to her Employer following the assault on August 21, 2016, and that she missed work after that date due to her complaints associated with the assault." *Id.*

With respect to the testimony of the medical experts, the WCJ found "the opinions of Dr. Mauthe to be credible, logical, internally consistent, persuasive, and [] accepted [them] as fact for purposes of establishing that Claimant did not suffer a work injury or disability related thereto as a result of the incident described on August 21, 2016." (F.F. No. 23.) In so deciding, the WCJ found that "Dr. Mauthe's opinions [were] supported by his review of Claimant's objective diagnostic study," which indicated "that Claimant's cervical MRI only evidenced some degenerative changes with no evidence of any kind of trauma." *Id.* The WCJ further found that "Dr. Mauthe's opinions [were] supported by Claimant's failure to receive treatment following her alleged work injury until after she was terminated during which time she was able to continue working without restrictions at her regular duty job." *Id.* Additionally, the WCJ determined that "[t]o the extent that the opinions of Dr. Lorenzo conflicted with the credible and accepted opinions of Dr. Mauthe they are rejected as less credible and persuasive." (F.F. No. 24.) In making this determination, the WCJ noted "that Dr. Mauthe obtained a more detailed history from Claimant," "conducted a more thorough review of records and testimony in this case," and "that Dr. Lorenzo never offered an opinion that Claimant was disabled as a result of a work injury." *Id.*

10

Based on his assessment of the evidence and credibility determinations, the WCJ found "that the assault described by Claimant did not cause Claimant to suffer a cervical injury resulting in disability, as alleged." (F.F. No. 25.) The WCJ further found, ostensibly in the alternative, "that Claimant's alleged injuries were not sustained in the course of her employment since Claimant's alleged injuries were the result of a third person whose intent to injure Claimant was based on personal animosity and was not directed at Claimant because of her employment under [s]ection 301(c)(1)" of the Act. (F.F. No. 26.) Ultimately, given his findings of fact, the WCJ concluded that Claimant did not carry her burden of proof and failed to establish that she suffered a work-related injury on August 21, 2016. (Conclusion of Law No. 2.) Accordingly, the WCJ denied Claimant's claim petition.

Claimant then appealed to the Board, contending, *inter alia*, that the WCJ erred in concluding that the personal animosity exception was applicable and that she did not sustain a work-related injury in the course of her employment. In addressing the former contention, the Board reasoned as follows:

> The WCJ found that Claimant was not in the course of her employment because her alleged injuries were a result of a person intending to harm her based on personal animosity. Personal animus is an affirmative defense [to] Claimant's presumption that she was in the course of her employment if she was on the premises, and [Employer] holds the burden of proof. An injury is not compensable if it was caused by an act for a third person who intended to injure the employee for reasons personal to the assailant. [] Newhart testified that Claimant and Mariah [Whitaker], Claimant's daughter and co-worker, were having issues because of [past familial issues]. We conclude that [Employer] did not meet its burden of proof on its affirmative defense of personal animus because this testimony is not substantial, competent evidence to establish that Claimant was attacked for personal reasons, especially

11

when the WCJ rejected Claimant's proposed reason for the attack.

(Board's decision at 1, n.1) (internal citations omitted). Nonetheless, the Board concluded that the error was "harmless" because the WCJ additionally found that Claimant did not sustain a work-related injury. *Id.*

In disposing of Claimant's latter assertion of error, the Board offered the following rationale:

> The WCJ found Claimant to be credible and persuasive, in part, that an altercation occurred on August 21, 2016, wherein she was attacked by her nephew. The WCJ found Claimant not credible nor persuasive that she suffered a disability because she failed to offer records relative to treatment from the paramedics on August 21, 2016, she worked full duty without restrictions until her employment was terminated, she initially denied that she had problems with her neck prior to August 21, 2016, and her testimony was contradicted by the credible testimony of [] Newhart and other records.
>
> The WCJ found Dr. Mauthe to be more credible and persuasive than Dr. Lorenzo because of Dr. Mauthe's review of diagnostic studies, his logical and internally consistent testimony, a more detailed history obtained from Claimant, his more thorough review of medical records and testimony, and Claimant's failure to receive treatment until after she was terminated. The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight and is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. Determinations of credibility and the weight to be accorded evidence are the prerogative of the WCJ, not the Board.
>
> Here, Claimant bore the burden of proof that she sustained a work-related injury. She was unable to meet her burden of proof because the WCJ rejected her testimony that the work incident caused a disabling injury. Therefore, the WCJ did not err.

12

(Board's decision at 3-4) (internal citations omitted).

Therefore, despite having concluded that Employer failed to establish a personal animosity defense as a matter of the law, the Board affirmed the WCJ's decision on the ground that Claimant failed to establish, with credible evidence, that she sustained a work-related injury on the date in question. Claimant then filed a petition for review with this Court.

## Discussion

In her first issue on appeal,[4] Claimant "submits that the Board committed an error of law in affirming the WCJ . . . after it determined that the WCJ erred in determining that [Employer] had proven the personal animus defense." (Claimant's Br. at 15.) Claimant contends that the Board's "error was not harmless as it barred [her] from benefits," reasoning that, if "[Employer] failed to prove this defense, then Claimant was indeed within the course and scope of her employment at the time of injury." *Id.* at 15-16.

In a claim petition proceeding, the claimant bears the burden of proving all elements necessary for an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Pursuant to section 301(c)(1) of the Act, 77 P.S. §411(1), an employee's injury is compensable if it satisfies two conditions: that is, the injury "(1) arises in the course of employment **and** (2) is causally related thereto." *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927, 930 (Pa. Cmwlth. 2010) (emphasis added).

_____

[4] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

13

These requirements are conjunctive in nature and analytically distinct. *See Good Shepherd Workshop v. Workmen's Compensation Appeal Board (Caffrey)*, 555 A.2d 1374, 1377 n.3 & 1378-79 (Pa. Cmwlth. 1989); *Workmen's Compensation Appeal Board v. United States Steel Corporation*, 376 A.2d 271, 273-75 (Pa. Cmwlth. 1977).

Moreover, section 301(a) of the Act contains what is commonly known as the personal animosity exception. While, under the Act, an employer is generally liable for compensation for injuries suffered by an employee in the course of her employment, section 301(c)(1) of the Act excludes from compensation injuries intentionally inflicted by third parties, including co-workers, based on personal animosity unrelated to the claimant's employment. 77 P.S. §411(1); *LeDonne v. Workers' Compensation Appeal Board (Graciano Corp.)*, 936 A.2d 124, 129 (Pa. Cmwlth. 2007). As in all affirmative defenses, the burden is on the proponent, *i.e.*, the employer, to prove that the facts and circumstances satisfy the criteria necessary to establish personal animosity and therefore bar a claimant's petition for benefits. *Heath v. Workers' Compensation Appeal Board (Pennsylvania Board of Probation and Parole)*, 860 A.2d 25, 29-30 (Pa. 2004).

Per section 301(a) of the Act, it is plain that an injury that is caused by the act of a third person intending to injure an employee because of reasons personal to the third person, and not directed against the employee because of the employment, falls outside of the definition of "course of employment." *See* 77 P.S. §431; *Heath*, 860 A.2d at 29. Stated otherwise, if an employer carries its burden of proof and establishes the personal animosity exception, a claimant cannot recover benefits because the claimant did not sustain an injury in the "course of employment." *See LeDonne*, 936 A.2d at 129.

Here, assuming that the Board was correct in concluding that Employer failed to prove the personal animosity exception, and that Claimant suffered an injury in the course of her employment, Claimant was nonetheless obligated to additionally demonstrate that the injury was "related" to her employment. Succinctly, the "related thereto" requirement is one of causation. As stated by one treatise: "Ultimately, however, a causal connection must exist between the claimant's work activities and . . . the injury. It is in this context that the 'related thereto' provision has direct application." David B. Torrey and Andrew E. Greenberg, 8 *West's Pennsylvania Practice, Workers' Compensation Law and Practice* §4:50 (3d ed. 2008). In *United States Steel Corporation*, this Court explained that the General Assembly added the term "and related thereto" to the Act in 1972 "for the purpose of requiring in cases of injury or death from natural causes . . . some proof that the injuries were related to the employment." 376 A.2d at 274. Consequently, "[e]ven if it was determined that Claimant was in the course and scope of [her] employment, [she] must still show the alleged injuries were related to [her] work." *McCormick v. Workers' Compensation Appeal Board (Stuart Dean Company, Inc.)* (Pa. Cmwlth., No. 1162 C.D. 2018, filed June 21, 2019) (unreported), slip op. at 20 n.13.[5] Therefore, in light of this case law and legal principles, we agree with the Board that the WCJ's error, if any, was harmless and that to receive benefits, Claimant had to prove causation.

This brings us to Claimant's second issue. Claimant asserts that the Board, and necessarily the WCJ, erred in denying her benefits because the credible testimony of Employer's expert, Dr. Mauthe, "found that Claimant indeed sustained

---

[5] We cite *McCormick,* an unreported decision, for its persuasive value in accordance with section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

an injury as a result of her workplace assault on August 21, 2016." (Claimant's Br. at 12.) More specifically, Claimant contends that

> Dr. Mauthe testified that he believed the mechanism of injury in this case was sufficient to cause Claimant to suffer a cervical sprain/strain. Because Dr. Mauthe did not evaluate Claimant until March 2, 2017, at the very least, Claimant's medical treatment must be paid by [Employer] for the period of August 21, 2016, through and including March 2, 2017.

*Id.* at 17.

"In a claim petition for compensation, the claimant has . . . the burden of establishing a causal relationship between a work-related incident and an alleged disability." *Rife v. Workers' Compensation Appeal Board (Whitetail Ski Co.)*, 812 A.2d 750, 754 (Pa. Cmwlth. 2002). To show that an injury was related to employment, the claimant must demonstrate a causal connection between work and the injury, and unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle)*, 605 A.2d 478, 486 (Pa. Cmwlth. 1992). Further, "[t]he law is well established that the WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight. The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Dixon v. Workers' Compensation Appeal Board (Medrad, Inc.)*, 134 A.3d 518, 524 (Pa. Cmwlth. 2016) (internal citations omitted).

Here, Claimant mischaracterizes the WCJ's findings of fact and the nature of the testimony of Dr. Mauthe. Although Dr. Mauthe provided testimony in the alternative, opining that, "[e]ven assuming [Claimant] had an exacerbation for a period of time," "at the time of [his] evaluation she had fully recovered," (F.F. No. 17), this was a secondary diagnosis, rendered in response to a hypothetical. *See* F.F.

16

No. 20 ("Upon re[-]direct examination, Dr. Mauthe reaffirmed his opinion that if Claimant had an exacerbation, she had fully recovered, although he believed that her neck was not injured in the incident."). As his primary opinion, Dr. Mauthe determined that "based upon his review of records, physical examination, and review of imaging studies, that there was no evidence of any aggravation of any preexisting condition" and he "did not find that there was an exacerbation." *Id.* (internal citations omitted). Importantly, while the WCJ generally found the testimony of Dr. Mauthe to be credible and persuasive, the WCJ specifically credited Dr. Mauthe's primary opinion and "accepted [it] as fact for purposes of establishing that Claimant did not suffer a work injury or disability related thereto as a result of the incident described on August 21, 2016." (F.F. No. 23.) In other words, based on the testimony of Dr. Mauthe, the WCJ found, as a matter of fact, that there was no causal relationship between the work-related incident and Claimant's alleged disability. Therefore, given this record, we conclude that Claimant's second argument lacks merit.[6]

---

[6] In a footnote in her brief, Claimant advances two other arguments. First, "Claimant continues to maintain that the WCJ's credibility assessments were arbitrary and capricious and were not based upon the evidence of record taken as a whole." (Claimant's Br. at 17 n.3.) Second, "Claimant also continues to maintain that she suffered an ongoing disability stemming from her August 21, 2016 workplace attack from the date of injury, continuing through the present." *Id.* However, these cursory, one-sentence arguments are not supported with analysis or citation to legal authority and, thus, they are insufficiently developed and "are wholly inadequate to present specific issues for review." *Commonwealth v. Feineigle*, 690 A.2d 748, 751 n.5 (Pa. Cmwlth. 1997). As such, we conclude that these issues are waived for purposes of appellate review. *See Boniella v. Commonwealth*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008).

17

Accordingly, having concluded that Claimant has not presented this Court with a basis upon which to disturb the rulings below, we affirm the order of the Board affirming the denial of Claimant's claim petition.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Whitaker,                          :
                Petitioner      :
                                :   No.  40 C.D. 2020
                v.             :
                                :
Workers' Compensation Appeal             :
Board (DNA Central, Inc. d/b/a           :
Dedicated Nursing Associates, Inc.),     :
                Respondent      :

## **_ORDER_**

        AND NOW, this 11th day of January, 2021, the December 24, 2019 order of the Workers' Compensation Appeal Board, affirming the decision of a workers' compensation judge denying the claim petition filed by Nicole Whitaker, is hereby affirmed.

 

                                      _____
                                        PATRICIA A. McCULLOUGH, Judge