Edward Dixon,                      :
               Petitioner     :
                     :
           v.                 :
                     :
Workers' Compensation Appeal   :
Board (Medrad, Inc.),          :    No. 1700 C.D. 2014
            Respondent    :    Submitted: May 29, 2015

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                          FILED: March 30, 2016

Edward Dixon (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) August 29, 2014 order affirming the Workers' Compensation Judge's (WCJ) decision granting Medrad, Inc.'s (Employer) suspension petition (Suspension Petition), denying Claimant's two penalty petitions, and modifying the WCJ's decision to reflect that Claimant's Challenge to Employer's Notification of Suspension (Challenge Petition) was granted. Claimant presents three issues for this Court's review: (1) whether the WCJ erred by suspending Claimant's total disability benefits; (2) whether the WCJ erred by not granting Claimant's penalty petition for failing to pay Claimant's disfigurement benefits after Claimant's temporary total disability benefits had been suspended (First Penalty Petition); and (3) whether the WCJ erred by not granting Claimant's penalty petition for the Employer's failure to reinstate Claimant's WC benefits when the WCJ did not hold a hearing on Claimant's Challenge Petition within 21 days (Second Penalty Petition).

On December 26, 2002, Claimant sustained a work injury described as a cervical strain, and began receiving weekly WC benefits pursuant to a Notice of Temporary Compensation Payable, which converted to a Notice of Compensation Payable by operation of law. By May 28, 2010 WCJ Decision and Order, 30 weeks of disfigurement benefits were awarded for Claimant's cervical surgical scar. By July 29, 2011 Notification of Suspension or Modification, Employer notified Claimant that as of July 25, 2011, his benefits were being suspended based on his return to work at earnings equal to or greater than his pre-injury earnings. On August 3, 2011, Employer filed its Suspension Petition alleging that it had offered Claimant a specific job within his physical capacity and that Claimant returned to work as of July 25, 2011, but stopped working again on August 3, 2011. Employer also sought a supersedeas. On August 8, 2011, Claimant filed his Challenge Petition.

On September 6, 2011, Claimant filed his First Penalty Petition alleging that Employer failed to pay disfigurement benefits in accordance with the WCJ's May 28, 2010 order. Claimant sought a 50% penalty and counsel fees. Also on September 6, 2011, Claimant filed his Second Penalty Petition alleging that Employer violated Section 413(c) of the WC Act (Act).[1] Therein, Claimant correspondently sought a 50% penalty on all past-due benefits and counsel fees. By January 9, 2013 order, having found that the offered position was available to Claimant, and that Claimant did not exercise good faith in his attempt to return to work, the WCJ granted Employer's Suspension Petition and denied Claimant's Challenge Petition. The WCJ also denied Claimant's First Penalty Petition because the disfigurement benefits would not become due until the temporary total disability benefits were terminated or suspended, and Claimant's temporary total disability benefits were only temporarily suspended between July 25, 2011 and August 2, 2011 while Claimant

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 2 of the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.2.

2

was working.[2]   Finally, the WCJ denied the Second Penalty Petition because Claimant's Challenge Petition was not assigned to the WCJ until August 11, 2011, on which date the WCJ had already scheduled the supersedeas hearing for September 7, 2011, and issued a Supersedeas Order on September 9, 2011, and thus the hearing was timely.  Claimant appealed to the Board.  On August 29, 2014, the Board affirmed the WCJ's decision granting the Suspension Petition and denying the First and Second Penalty Petitions, and modified the WCJ's decision to reflect that Claimant's Challenge Petition was granted.  Claimant appealed to this Court.[3]

Claimant first argues that the WCJ erred by suspending Claimant's total disability benefits because the job Employer offered exceeded Claimant's restrictions. We disagree.

> Generally, in order to suspend a claimant's benefits, an employer must meet the following requirements:
>
> 1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
>
> 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.
>
> 3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

---

[2]  Claimant's temporary total disability benefits were reinstated as of August 3, 2011.

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

3

> 4. If the referral fails to result in a job[,] then claimant's benefits should continue.
>
> *Kachinski v. Workmen's Comp*[.] *Appeal B*[d.] *(Vepco Constr*[.] *Co.),* . . . 532 A.2d 374, 380 ([Pa.] 1987). Pursuant to Section 306(b)(2) of the [Act], an employer may establish its entitlement to a suspension or modification by either referring a claimant to an available position as required by *Kachinski* or 'establish[ing a claimant's] 'earning power' through expert opinion evidence including job listings with employment agencies, agencies of the Department of Labor and Industry, and advertisements in a claimant's usual area of employment.' *South Hills Health Sys*[.] *v. Workers'* [*Comp.*] *Appeal* [*Bd.*] *(Kiefer),* 806 A.2d 962, 966 (Pa. Cmwlth. 2002).

*City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 4 A.3d 1130, 1134 (Pa. Cmwlth. 2010), *aff'd*, 67 A.3d 1194 (Pa. 2013) (footnote omitted). "The burden of proof then shifts to the claimant to demonstrate that he responded to the job offer in good faith. If the claimant does not exercise good faith, then his benefits can be modified." *Bey v. Workers' Comp. Appeal Bd. (Ford Electronics)*, 801 A.2d 661, 666 (Pa. Cmwlth. 2002) (citation omitted).

In the instant case, Alexander Kandabarow, M.D. (Dr. Kandabarow) performed an independent medical examination (IME) of Claimant. As a result thereof, Dr. Kandabarow testified that he "felt that [Claimant] was capable of work and [Dr. Kandabarow] filled out an estimated physical capacities worksheet, and [he] also reviewed a DVD of employment that was offered with [Employer] for [Claimant] and [he] felt that [Claimant] was capable of performing the employment as [portrayed] on the DVD." Reproduced Record (R.R.) at 329a.

Upon reviewing Dr. Kandabarow's IME, Employer's Service Shop Supervisor Steve Wilbert (Wilbert) offered Claimant a modified mechanical specialist position. Claimant asserts that because Wilbert testified that the offered job required additional, more physically-strenuous duties than portrayed on the DVD, it

4

was not the job Dr. Kandabarow approved. However, Wilbert clarified that Claimant would not be asked to do anything outside of his weight limitations. *See* R.R. at 299a. Further, when Dr. Kandabarow was specifically asked whether Claimant could perform duties not depicted on the DVD but that were within Dr. Kandabarow's physical capacity recommendations, Dr. Kandabarow responded: "Yes." R.R. at 340a. Claimant further maintains that because Wilbert testified that the offered job required repetitive motions, it was not within Claimant's restrictions. However, both Dr. Kandabarow and Claimant's treating physician, Thomas Kramer, M.D. (Dr. Kramer) testified that although Claimant could **not** do repetitive motions **with his left hand**, he **could do so with his right hand** which is his dominant hand. R.R. at 334a, 361a-362a (emphasis added). Because Dr. Kandabarow testified that Claimant could perform the modified position offered to Claimant, and Wilbert related that such a position was offered to Claimant,[4] Employer met its burden of proving that it is entitled to have Claimant's WC benefits suspended.

Once employer established its entitlement to a suspension, Claimant had the burden to prove he made a good-faith attempt to follow through on the job offer. *Bey.* Claimant testified that he worked July 25, 2011 through August 2, 2011. Specifically, Claimant recalled that he was scheduled to work from 8:30 a.m. to 5:00 p.m. on Monday, July 25, 2011, but he left at 2:30 p.m. after reviewing policies, gathering tools and attempting to get his photo identification, because his neck and arm started bothering him. On Tuesday, July 26, 2011, Claimant did not physically perform any repair work, but left early because his neck was hurting. On Wednesday, July 27, 2011, after going over his benefits with Human Resources, Claimant left early due to his son's doctor appointment and because his neck was sore. On Thursday, July 28, 2011, after reading a document and trying to find his

---

[4] Although Claimant was to report to work on July 11, 2011, Employer agreed to defer Claimant's start date until July 25, 2011. Claimant reported to work on July 25, 2011.

tools and a computer, Claimant left early. On Friday, July 29, 2011, Claimant left work at 9:00 a.m. because his wife had car trouble. Summarizing Claimant's work that week, the following exchange occurred:

> Q. So you did not perform any of the repair duties that are depicted on the DVD of the job that was offered to you by [Employer]; correct?
>
> A. There [were] no tools there to perform the job.
>
> Q. You reviewed documents, you sat, you walked around looking for tools, but you did not repair any devices for the five days in July of 2011?
>
> A. No, I did not have the equipment to do that.

R.R. at 161a-162a.

> Concerning his work on August 1, 2011, Claimant testified:
>
> I tried to do as much as I could do, to make sure I had all of my documents done, try to --- finished trying to find [t]ools. I borrowed tools, and then I had to go speak with Dean Bennett on where I could [find] ice to pack my neck down.

R.R. at 162a. Claimant stated that he left around lunchtime. With respect to Claimant's work on August 2, 2011, Claimant testified as follows:

> Q. Tuesday, August 2, you come [sic] into work.
>
> A. Yes.
>
> Q. What did you do at work on Tuesday, August 2?
>
> A. I tried to do what I'd been previously hired to. I believe I did not have no more documents [sic] to do, but I still did not have my work station or tools to perform the job.
>
> Q. So you sat there?
>
> A. Well, after I tried to basically tried to find tools and nobody had and [sic] nothing, there was really nothing more to do but clean my bench off and get ready for when they would come, if they would come.

6

Q. So once you cleaned your bench off, you just sat at the work station?

A. Yeah.

Q. Yes?

A. Yeah, because it was --- I mean, nobody used it for a while, so it was free.

R.R. at 163a-164a. Claimant left early for a follow-up appointment with his doctor and never returned to Employer.

The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

Here, the WCJ expressly found:

Based upon the entire evidence of record, including the live testimonies and demeanors of [C]laimant, [Employer's Investigator] Ed Zalewski, [Wilbert] and [Employer's Corporate Risk Manager] Timothy Budacki and the deposition testimony of Dr. Kandabarow, I specifically reject any contrary or conflicting testimony of [C]laimant and deposition testimony of Dr. Kramer. **I find as a fact that [C]laimant did not make a good faith effort in his attempted return to work from July 25, 2011[] to August 2, 2011,** in which he was only performing sedentary duties of reading manuals and/or watching video as he had not yet been required to perform the light[-]duty work of a mechanical service technician. [C]laimant had left work early on multiple occasions complaining of neck and left arm pain but such work in July and August of 2011 was well within the restrictions of his own physician, Dr. Kramer, who was not aware that [C]laimant had not even yet performed any of the job activities depicted on the DVD. Thus, I specifically accept as credible the medical opinions of Dr. Kandabarow and specifically reject any

7

contrary opinions of Dr. Kramer that [C]laimant could not perform the job activities depicted on the DVD or as testified to by [Wilbert] because the work activities were of a repetitive nature and that as [C]laimant is right[-]handed, his dominant arm has no physical limitations and even Dr. Kramer was at a loss to explain [C]laimant's pain complaints in his February 28, 2012 [sic], office note. **I find as a fact that although work was offered to [C]laimant within his physical capabilities as of July 11, 2011, [Employer], as evidenced by Employer Exhibit D, had agreed to defer [C]laimant's return to work until Monday, July 25, 2011, without a loss of wages and, thus, [Employer] is entitled to a continuing suspension of [WC] benefits on and after July 25, 2011.** I additionally accept, in part, the testimony of Dr. Kramer that after [C]laimant had attempted to return to work in July and August of 2011 there were no new physical exam findings and no new subjective complaints.

WCJ Dec. at 9, Finding of Fact (FOF) 20 (emphasis added).

The Court may not reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). "[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quoting *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). Because the record evidence supports the WCJ's finding, we hold that the WCJ properly suspended Claimant's temporary total disability benefits.

Claimant next contends that the WCJ erred in failing to grant Claimant's First Penalty Petition because Employer failed to begin Claimant's disfigurement benefits after Claimant's temporary total disability benefits had been suspended on July 25, 2011. We disagree.

Section 306(d) of the Act provides in relevant part:

> Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in clause (c) of this section, **the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries**, but in that event the employe shall not receive compensation provided in clause (c) of this section for the specific healing period. In the event the employe suffers two or more permanent injuries of the above enumerated classes compensable under clause (c) of this section, he shall be compensated for the largest single healing period rather than the aggregate of the healing periods.

77 P.S. § 513 (emphasis added). The Pennsylvania Supreme Court expressly held:

> Subsection 306(d) [of the Act] . . . provides that when a specific loss claimant under subsection (c) has other injuries in addition to the specific loss which result in compensation for [t]emporary total disability, the number of weeks specified for the compensation of the specific loss in schedule (c) **will not begin until the period of [t]emporary total disability has ended**.

*Turner v. Jones & Laughlin Steel Corp.*, 389 A.2d 42, 45 (Pa. 1978) (emphasis added).

"The assessment of penalties, and the amount of penalties imposed are matters within the WCJ's discretion." *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008). "However, '**a violation of the Act or its regulations must appear in the record for a penalty to be appropriate**.'" *Id.* (emphasis added) (quoting *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n),* 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000)). "No penalty may be imposed under [Section 435[5]] [of the Act] absent proof of a violation of the Act or the rules of the department or board." *Id.* (quoting *Spangler v. Workmen's Comp. Appeal Bd. (Ford),* 602 A.2d 446, 448 (Pa. Cmwlth. 1992)). "Further, a claimant who files a

---

[5] Added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 991.

penalty petition bears the burden of proving a violation of the Act occurred. If the claimant meets his or her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act." *Id.* (citation omitted).

Here, although Claimant's temporary total disability benefits were suspended from July 25, 2011 through August 2, 2011, the WCJ issued a supersedeas order on September 7, 2011 reinstating Claimant's temporary total disability benefits beginning August 3, 2011. The original suspension was thereby only a temporary suspension of Claimant's WC benefits on account of Claimant returning to work, and did not mandate Employer to begin Claimant's disfigurement benefits.

As explained by the WCJ:

> [S]uch [disfigurement] benefits did not become payable until after [C]laimant's indemnity wage loss benefits are suspended or terminated and [C]laimant's indemnity wage loss benefits were only suspended between July 25, 2011, and August 2, 2011, a period of less than one week and were reinstated from August 3, 2011, by [the WCJ's] supersedeas order of September 9, 2011.

WCJ Dec. at A-12 - A-13, FOF 21.

The *Turner* Court explained that Section 306(d) of the Act is a timing provision established to make sure claimants do not receive both temporary total disability and disfigurement benefits simultaneously. *Id.* Specifically, "[n]one of those subsections contain any substantive provisions relating to eligibility for compensation. Those requirements are set forth extensively elsewhere in the Act. This set of provisions functions as the heading suggests: they are 'Schedules of Compensation', relating only to the specifics of payment." *Turner*, 389 A.2d at 45. As Claimant's temporary total disability benefits were not terminated until the WCJ's January 9, 2013 order granting Employer's Suspension Petition as of July 25, 2011, Employer was not required to begin Claimant's disfigurement benefits until that date. Further, because the supersedeas order reinstated Claimant's temporary total

disability benefits, and Claimant was entitled to payment of the **full disfigurement award** after the Order of Suspension was entered, Claimant's disfigurement benefits were not diminished. Thus, the WCJ properly found that Employer did not violate the Act. Accordingly, we hold that the WCJ did not err in denying Claimant's First Penalty Petition.[6] *Gumm.*

Lastly, Claimant argues that the WCJ erred in failing to grant Claimant's Second Penalty Petition. Specifically, Claimant asserts that Employer violated the Act when it did not reinstate Claimant's benefits when a hearing was not held within 21 days after Claimant filed his Challenge Petition. We agree.

Initially, "[w]hen construing a statute, we must follow the letter of the statute if its words are unambiguous[.]" *Velocity Express v. Pa. Human Relations Comm'n,* 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004) (quoting *McClellan v. Health Maint. Org. of Pa.,* 686 A.2d 801, 805 (Pa. 1996)).

> We are mindful that, when ascertaining the General Assembly's intent with regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute that the agency is charged to enforce. However,

---

[6] Section 435(d) of the Act provides, in relevant part:

> The [D]epartment, the [B]oard, or any court which may hear any proceedings brought under this [A]ct shall have the power to impose penalties as provided herein for violations of the provisions of this [A]ct or such rules and regulations or rules of procedure:
>
> (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d).

> [courts] need not give deference to an agency where its construction of a statute frustrates legislative intent. Therefore, although courts often defer to an agency's interpretation of the statutes it administers, where . . . the meaning of the statute is a question of law for the court, when convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted.
>
> *Rosen v. Bureau of* [*Prof'l*] *and Occupational Affairs, State Architects Licensure Bd.,* 763 A.2d 962, 968 (Pa. Cmwlth. 2000) (citation omitted), *appeal denied, . . .*781 A.2d 150 ([Pa.] 2001).  Such is the case here.

*Velocity Express,* 853 A.2d at 1185 (citations omitted).  Further, "[i]t is well settled law that an agency's substantive regulations . . . have the force and effect of law." *Eastwood Nursing and Rehab. Ctr. v. Dep't of Pub. Welfare,* 910 A.2d 134, 142 (Pa. Cmwlth. 2006).

> Section 413(c)(1) of the Act provides:
>
> If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a [WCJ] may be requested by the employe indicating by a checkoff on the notification form that the suspension of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of suspension from the insurer.  **The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge**.

77 P.S. § 774.2(1) (emphasis added).  Section 131.50a of the WC Regulations provides in relevant part:

> (a) This section governs the disposition of an employee's request for a special supersedeas hearing made in connection with a challenge to the suspension or modification of [WC] benefits under [S]ections 413(c) and 413(d) of the [A]ct (77 P. S. [§]§ 774.2 and 774.3).
>
> (b) A special supersedeas hearing will be held within 21 days of the employee's filing of the notice of challenge.

12

(c) During the course of a challenge proceeding, the issues are limited to determining whether the claimant has stopped working or is earning the wages stated in the Notice of Suspension or Modification under [S]ections 413(c) or 413(d) of the [A]ct and the challenge shall be decided only on those issues.

. . . .

(e) The [WCJ] to whom the notice of challenge has been assigned will issue a written order on the challenge within 14 days of the hearing.

(f) **If the [WCJ] fails to hold a hearing within 21 days or fails to issue a written order approving the suspension or modification of benefits within 14 days of the hearing, the insurer shall reinstate the employee's [WC] benefits** at the weekly rate the employee received prior to the insurer's suspension or modification of benefits under [S]ections 413(c) or 413(d) of the [A]ct.

34 Pa. Code § 131.50a (emphasis added).

Here, Claimant's Challenge Petition was filed on August 8, 2011, thus the WCJ was required to hold the hearing by August 29, 2011. The supersedeas hearing was not held until September 7, 2011. Because the WCJ "fail[ed] to hold a hearing within 21 days . . . , the [Employer was required to] reinstate [Claimant's WC] benefits . . . ." 34 Pa. Code § 131.50a. Accordingly, Employer violated the Act when it did not reinstate Claimant's benefits when a hearing was not held within 21 days of the date Claimant filed his Challenge Petition.

The WCJ, however, found Employer did not violate the Act because: first, the WCJ had 21 days from the date the Challenge Petition was "assigned by the Bureau" (August 11, 2011) to hold the supersedeas hearing; and second, the WCJ "scheduled" the hearing on August 11, 2011 for September 7, 2011. WCJ Dec. at A-12 - A-13, FOF 21. Neither of these findings is supported by law. Section 413(c)(1) of the Act expressly provides: "The special supersedeas hearing **shall be held** within twenty-one days of the **employe's filing** of the notification of challenge." 77 P.S. §

13

774.2(1).  Notwithstanding, assuming the WCJ did have 21 days from the date of the assignment to hold the hearing, the hearing would had to have been held by September 1, 2011.  The supersedeas hearing was held on September 7, 2011.  Consequently, we are constrained to hold that the WCJ erred by not concluding that Employer violated the Act when it did not reinstate Claimant's WC benefits as mandated by Section 413(c)(1) of the Act and its corresponding regulation.  Accordingly, we remand the matter to the Board with direction to remand to the WCJ to determine whether to assess a penalty, and if so, the amount thereof.  *Gumm.*

For all of the above reasons, the Board's order is affirmed in part, reversed in part and this matter is remanded to the Board with direction to remand to the WCJ for further proceedings consistent with this opinion.

_____
ANNE E. COVEY, Judge

Judge Cohn Jubelirer dissents.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Dixon,                          :
                    Petitioner        :
                                      :
          v.                          :
                                      :
Workers' Compensation Appeal          :
Board (Medrad, Inc.),                 :     No. 1700 C.D. 2014
                    Respondent        :

O R D E R

AND NOW, this 30th day of March, 2016, the Workers' Compensation Appeal Board's (Board) August 29, 2014 order is affirmed in part, reversed in part and this matter is remanded to the Board with direction to remand to the Workers' Compensation Judge for further proceedings consistent with this opinion.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge