Diana Lackner,                  :
              Petitioner        :
                                     :
          v.                      :
                                     :
Workers' Compensation Appeal Board   :
(The Anchor Hocking Company),       :    No. 1577 C.D. 2018
                Respondent     :    Submitted: April 18, 2019

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: July 23, 2019

       Diana Lackner (Claimant) petitions for review of the October 30, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Pamela Briston (WCJ) that granted the Petition to Suspend Compensation Benefits (Suspension Petition) filed by The Anchor Hocking Company (Employer) against Claimant pursuant to the Workers' Compensation Act (Act)[1] and the Petition to Review Utilization Review Determination (UR Review Petition) filed by Employer under the Act. We affirm.

       On May 16, 2012, Claimant suffered an injury to her left thumb while working on Employer's assembly line sorting and packaging glassware. *See* WCJ

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Decision dated September 7, 2017 (WCJ Decision) at 3 & Findings of Fact (F.F.) 1; Board Opinion dated October 30, 2018 (Board Opinion) at 1. Employer accepted Claimant's injury by way of Amended Notice of Compensation Payable, which described the injury as "tendon tear in the left thumb." *See* WCJ Decision at 3; Board Opinion at 1. On November 17, 2015,[2] a different WCJ granted a Review Petition filed by Claimant, expanding the description of her work injury to include left-hand complex regional pain syndrome (CRPS)/Reflex Sympathetic Dystrophy (RSD) and carpal tunnel surgery.[3] *See* WCJ Decision at 3; Board Opinion at 1; *see also* WCJ Decision dated November 17, 2015.

Claimant underwent an Independent Medical Examination (IME) performed by Steven Kann, M.D., on January 13, 2016, after which Dr. Kann released Claimant to return to work without restrictions. F.F. 2. Thereafter, on February 19, 2016, Employer issued Claimant a Notice of Ability to Return to Work.

On May 31, 2016, Employer sent Claimant a letter offering Claimant two positions: a Sorter position and a Set-Pack position. F.F. 3; *see also* Employer's Letter to Claimant dated May 31, 2016. The Sorter position was Claimant's pre-injury position. F.F. 3; *see also* Employer's Letter to Claimant dated May 31, 2016. The Set-Pack position is a position that Employer provides for employees with work-related restrictions to allow those employees to work at their own pace performing the duties of a Sorter and Packer at a modified duty level. F.F. 3; *see also* Employer's Letter to Claimant dated May 31, 2016. Claimant told Employer she

---

[2] The WCJ Decision erroneously states the date of the November 17, 2015 WCJ Decision as November 7, 2015. WCJ Decision at 3.

[3] In addition to granting Claimant's Review Petition, the November 17, 2015 WCJ Decision denied a Petition to Suspend Compensation Benefits filed by Employer on December 6, 2013. *See* WCJ Decision dated November 17, 2015.

would consider the offer, but did not return to work at either of the offered positions. F.F. 1.

On June 13, 2016, Employer filed the instant Suspension Petition alleging that Employer offered Claimant a position within her physical and vocational capabilities and that Claimant refused in bad faith. *See* WCJ Decision at 3; Board Opinion at 1; *see also* Suspension Petition.

Additionally, on July 8, 2016, Employer filed a Utilization Review (UR) Request seeking a determination regarding the reasonableness and necessity of treatment provided Claimant by Oriente DiTano, M.D. *See* WCJ Decision at 3; Board Opinion at 1. On August 31, 2016, the assigned Utilization Review Organization (URO) found all Dr. DiTano's treatment reasonable and necessary, including a prescribed compound cream. *See* WCJ Decision at 3; Board Opinion at 1; URO Determination Report dated August 31, 2016 (URO Determination). On September 15, 2016, Employer filed a Petition for Review of Utilization Review Determination (UR Review Petition), seeking review of the URO Determination by a WCJ. *See* WCJ Decision at 3; Board Opinion at 1; UR Review Petition.

After consolidating the petitions and conducting a hearing on the matter,[4] the WCJ decided the Suspension Petition and the UR Review Petition by decision issued on September 7, 2017. *See generally* WCJ Decision; *see also* Board Opinion at 1. The WCJ found Employer met its burdens of proof as to both the Suspension Petition and the UR Review Petition, to the extent the UR Review Petition sought review of the reasonableness and necessity of the prescribed

---

[4] Claimant testified before the WCJ on July 21, 2016 and May 11, 2017. *See* Notes of Testimony, July 21, 2016 & May 11, 2017. The WCJ also received medical expert reports and deposition testimony on February 23, 2017 and May 11, 2017. *See* Notes of Testimony, February 23, 2017 & May 11, 2017.

compound cream. WCJ Decision at 8-9; Board Opinion at 1-2. Accordingly, the WCJ granted the Suspension Petition and partially granted the UR Review Petition, specifically determining that the prescribed compound cream was not reasonable and necessary. WCJ Decision at 8-9; Board Opinion at 1-2. Claimant appealed the WCJ's rulings, and the Board affirmed by opinion dated October 30, 2018. *See generally* Board Opinion. Claimant timely petitioned this Court for review.[5]

Claimant makes multiple claims on appeal.[6] Essentially, Claimant challenges whether substantial evidence existed to support the WCJ's grant of the

---

[5] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

[6] Claimant states her issues as follows:

> I. Did the [Board] err in affirming the [WCJ] in granting [Employer's] Petition to Suspend Workers' Compensation benefits when the Employer failed to meet its burden to establish by sufficient, competent, and credible evidence that it is entitled to a suspension of benefits?

> II. Did the [Board] err in affirming the Decision of the WCJ that the testimony of Dr. Kann is substantial evidence to conclude that the compounded pain cream is not reasonable and necessary medical treatment when the Employer has not met its burden to establish by sufficient, competent, and credible evidence that the compound

4

Suspension Petition and the UR Review Petition. *See* Claimant's Brief at 23-26. Claimant's arguments appear to be straight challenges to the WCJ's determinations regarding the credibility of, and weight to be afforded to, the evidence proffered by Employer with respect to the petitions.[7] *Id.*

### The Suspension Petition

Claimant first claims the Board erred by affirming the WCJ's grant of the Suspension Petition. *See* Claimant's Brief at 26. Claimant argues that Employer failed to adduce substantial evidence in support of its Suspension Petition because the testimony of Employer's Human Resources Manager was not credible. *Id.* We disagree.

Regarding an employer seeking a suspension of workers' compensation benefits based on an employee refusing a job referral, this Court has explained:

> Generally, in order to suspend a claimant's benefits, an employer must meet the following requirements:

---

cream prescribed to the Claimant is not reasonable, necessary, and causally related to the work injury she suffered on May 16, 2012?

III. Did the [Board] err in affirming the Decision of the [WCJ] who found the Claimant does not suffer from CRPS/RSD as a result of the work injury when in the previous round of litigation CRPS/RSD was accepted as part of the work injury?

Claimant's Brief at 4.

[7] Our broad restatement of Claimant's issues reflects Claimant's development of her claims, which can be described as sparse, at best. The contents of Claimant's arguments in the body of her brief do not necessarily correspond with the argument headings. *See* Claimant's Brief at 23-26. Claimant's arguments also generally lack citation to pertinent legal authority. *See id.* Further, while we acknowledge the thorough Statement of the Case section of Claimant's Brief, *see* Claimant's Brief at 5-19, we note that Claimant's Argument section almost entirely fails to apply any law to the specific facts of the Statement of the Case beyond conclusory statements that the WCJ Decision erroneously granted the petitions at issue. *See* Claimant's Brief at 23-26.

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job, then claimant's benefits should continue.

*Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 521–22 (Pa. Cmwlth. 2016) (quoting *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374, 380 (Pa. 1987)).  Pursuant to Section 306(b)(2) of the Act, one way an employer may establish its entitlement to a suspension is by proving that it referred a claimant to an available position that fits the occupational category for which the claimant has been medically cleared.  *Dixon*, 134 A.3d at 522.  If the employer proves it extended such a referral, "[t]he burden of proof then shifts to the claimant to demonstrate that [s]he responded to the job offer in good faith.  If the claimant does not exercise good faith, then [her] benefits can be modified." *Id.*

Here, in support of the Suspension Petition, Employer presented the testimony of Dr. Kann.  *See* F.F. 2.  Dr. Kann, a board certified orthopedic surgeon with a sub-specialty in hand, upper extremity, and micro-surgery, testified that he performed IMEs of Claimant on March 27, 2013 and January 13, 2016.  *Id.*  Dr. Kann testified that at the January 2016 IME, Claimant explained the condition of her

6

left thumb remained unchanged from the time of Dr. Kann's prior IME three years before. *Id.* Dr. Kann explained that, with the exception of a mildly positive torque test and grind test with subjective discomfort, Claimant's physical examination was objectively negative. *Id.* Claimant demonstrated a full range of motion and normal functioning. *Id.* Dr. Kann also noted that Claimant exhibited a sub-maximal effort during the physical examination. *Id.*

Dr. Kann further testified that he reviewed Claimant's medical records. *See* F.F. 2. He observed that Claimant's x-rays showed mild arthritis at the base of Claimant's thumb, but no evidence of CRPS or RSD. *Id.* Dr. Kann explained that patients suffering from chronic CRPS or chronic RSD will develop diffuse osteopenia, which is a loss of calcium in the bone that will present in an x-ray. *Id.* Dr. Kann testified that Claimant's x-rays did not display this classic finding. *Id.* Further, Dr. Kann noted that Claimant had no complaints referable to carpal tunnel and further found no objective evidence of any impairment at all. *Id.*

Dr. Kann diagnosed Claimant with work-aggravated arthritis in Claimant's CMC joint, but found no current evidence of CRPS/RSD or carpal tunnel. *See* F.F. 2. Regarding further treatment, Dr. Kann testified he would recommend over-the-counter anti-inflammatories and possible steroid injections, which he explained would be reasonable and appropriate. *Id.* Dr. Kann did not find Claimant's compound cream to be reasonable or necessary, however. *Id.* Dr. Kann testified that compound creams like the one Claimant has been prescribed are very expensive and have no proven medical benefits for patients. *Id.*

Ultimately, Dr. Kann found Claimant able to return to work at full, unrestricted capacity in her pre-injury position of Sorter at Employer. *See* F.F. 2.

Likewise, Dr. Kann testified Claimant is capable of performing the Set-Pack position. *Id.*

Employer also presented the deposition testimony of its Human Resources Manager, Mallory Weeks, in support of the Suspension Petition. *See* F.F. 3. Weeks, who never personally met Claimant, testified that, on the basis of Dr. Kann's release, she mailed Claimant a letter on May 31, 2016 offering Claimant two positions: her time-of-injury job of Sorter, or the lighter-duty position of Set-Pack. *Id.* Weeks explained that the Sorter position involves rapid pace sorting and packing of glassware that may weigh up to 35 pounds, with an average weight between 15 and 20 pounds. *Id.* Weeks testified that the Set-Pack position is a lighter duty position that entails sorting glassware and screwing lids onto salt and pepper shakers, which can be accomplished with one hand and, unlike the Sorter position, at the employee's own pace and without penalty for missing any production quotas. *Id.* Weeks elaborated that the Set-Pack position generally does not require lifting greater than 10 pounds and can be modified to accommodate employees with lifting restrictions so that such employees could perform the position without being required to lift in excess of 5 pounds. *Id.* Weeks testified that Claimant did not accept either offered position. *Id.*

In further support of its Suspension Petition, Employer submitted a Notice of Ability to Return to Work sent to Claimant on February 19, 2016 and the May 31, 2016 job offer letter offering Claimant the Sorter and Set-Pack positions. *See* F.F. 4; Notice of Ability to Return to Work dated February 19, 2016; Job Offer Letter to Claimant dated May 31, 2016.

To contest Employer's evidence, Claimant presented the testimony of Dr. DiTano, an orthopedic surgeon with a board-certification in hand surgery. F.F.

8

6. Dr. DiTano testified that he began treating Claimant in June of 2012. *Id.* At that time, he felt Claimant demonstrated some symptoms of RSD and he performed a carpal tunnel release on October 13, 2013, after which Claimant continued to have problems. *Id.* Dr. DiTano explained that he discharged Claimant from his care in August 2014 because he could not offer her further treatment. *Id.* However, Dr. DiTano testified that he again saw Claimant nearly two years thereafter, on June 6, 2016, at which time she complained of diffuse tenderness in her hand for which he continued her off work. *Id.* He explained that he referred Claimant to a pain specialist and recommended that Claimant try the contested compound cream as a last resort treatment for her discomfort. *Id.* Dr. DiTano testified that he last saw Claimant on August 30, 2016, at which time she complained of continuing sensitivity and he recommended that she see a pain management practice to receive ganglion blocks. *Id.* Ultimately, Dr. DiTano testified that he did not believe Claimant had fully recovered from her May 2012 work injury and that she is incapable of performing the requirements of either the Sorter or Set-Pack position due to her inability to use her left hand. *Id.*

Claimant also presented the testimony of Louis Olegario, M.D. F.F. 5. Dr. Olegario is board certified in physical medicine with a sub-specialty in interventional pain management. *Id.* Dr. DiTano referred Claimant to Dr. Olegario in July 2016. *Id.* Dr. Olegario testified that he performed a physical examination of Claimant, after which he diagnosed Claimant with CRPS of the left forearm, hand, and wrist. *Id.* Dr. Olegario performed a stellate ganglion block on September 12, 2016. *Id.* Dr. Olegario testified that he has also discussed the use of a spinal cord stimulator with Claimant because she has discontinued her pain medications, the side effects of which she cannot tolerate. *Id.* Ultimately, Dr. Olegario diagnosed

Claimant with CRPS of the left hand and forearm and testified that he feels she has not fully recovered from her work injury. *Id.* Dr. Olegario acknowledged that Claimant is right-handed. *Id.*

In addition to presenting the medical witnesses, Claimant testified on her own behalf before the WCJ. *See* F.F. 1. She explained that she worked for Employer for 10 years as an assembly line sorter and packager of glassware, which position required the use of both hands and lifting of up to 30 pounds. *Id.* Claimant testified that her work injury occurred on May 16, 2012, while she was performing her normal job duties. *Id.* Claimant testified that she treated with multiple physicians for her injury, including Dr. DiTano, who had performed a carpal tunnel surgery in October of 2013. *Id.* Claimant explained that she continues to experience problems with her left hand, wrist, and arm, including burning and tingling in her fingers, a lack of motion and grip, and a loss of muscle and cold sensitivity. *Id.* Claimant agreed that she has no problems with her right hand. *Id.*

Claimant acknowledged receiving the May 2016 letter from Employer offering her pre-injury Sorter position and a Set-Pack position. *See* F.F. 1. She testified she spoke with Weeks about the offer and informed her that, while Claimant was not refusing to return to work, she first wanted to speak with her physician. *Id.* Claimant then saw Dr. DiTano, who gave her an off-work slip. *Id.* Claimant agreed that she has no problems with her right hand, but testified she felt that due to the limitations of her left hand, she would be incapable of performing either the Sorter position or the Set-Pack position, which in her mind was the same as the Sorter position, only performed at a different pace. *Id.* Claimant testified she ultimately did not return to work for Employer. *Id.*

Of course, in workers' compensation matters, the WCJ determines credibility and weight of evidence, and neither the Board nor this Court may overturn those determinations on appeal. *Koszowski v. Workers' Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991); *see also Hawbaker v. Workmen's Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *reargument denied* (Apr. 3), *appeal denied*, 173 A.3d 252 (Pa. 2017) ("Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations.").

Regarding the Suspension Petition, the WCJ made the following relevant determinations:

> a. With respect to the Suspension Petition, I do not find [] Claimant credible that she is unable to return to work in the Set-Pack position. I note that [] Claimant has not attempted the position. I find the testimony of [] Weeks to be credible that this position requires the individual to, for example, screw the lids onto salt and pepper shakers. I find [] Claimant did not act in good faith by not attempting at any time to return to the position made available to her.
>
> b. I accept the testimony of [] Weeks to be credible that [Employer] offered [] Claimant positions, and [] Claimant has not returned to work. I further accept [] Weeks['] testimony that [Employer] would be willing to modify the Set-Pack position, and while there are quotas for this position, there are no penalties if Claimant would be unable to meet the quotas. I further note that [] Claimant had not seen Dr. DiTano since 2014. Once she received the job letter, she made an appointment with Dr. DiTano, and he wrote her off-work in June of 2016.
>
> c. I accept the opinions of Dr. Kann to be more credible than the opinions of Dr. Olegario and Dr. DiTano. Specifically, Dr. Kann credibly explained that [] Claimant

11

does not have evidence of CRPS or RSD as of his evaluation in 2016. I note his credible explanation that X-rays do not show any evidence of RSD or CRPS or any evidence of osteopenia. [] Claimant has a normal MRI. I further accept Dr. Kann's testimony that Claimant would not benefit from compound creams and that simple over-the-counter anti-inflammatory medication is all that she needs. . . .

d. It is clear from the testimony of Dr. Kann that he did not believe [] Claimant suffered from RSD/CRPS during either of his exams – March 27, 2013 and January 13, 2016. His opinions were rejected by [the previous] Workers' Compensation Judge in her November 17, 2015 decision. I accept his opinion as credible that the three (3) years following his initial exam of [January] 13, 2016, [] Claimant showed no signs of RSD/CRPS.

F.F. 7(a)-(d).

As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[8] we find that substantial record evidence supports the WCJ's findings of fact, specifically that Claimant recovered from her work injury enough to perform the employment positions that Employer offered to her and that Claimant did not act in good faith in refusing to attempt those positions. *See Koszowski*. Therefore, the WCJ properly granted the Suspension Petition and suspended Claimant's compensation benefits from June 13, 2016, the date Employer filed the Suspension Petition, onward. *See* WCJ Decision at 8-9 & Order.

Further, despite Claimant's argument to the contrary, the Board found that Dr. Kann's testimony acknowledged CRPS as part of Claimant's work injury. *See* Board Opinion at 5. The Board explained:

---

[8] *See* Board Opinion at 5 & 7.

12

> Claimant argues that Dr. Kann's testimony cannot establish the required change of condition because he did not agree that CRPS is part of the work injury. To the contrary, Dr. Kann testified specifically that[,] recognizing the work injury as aggravation of CMC arthritis, RSD/CRPS, and carpal tunnel syndrome, Claimant could return to full and unrestricted work as a laborer.

Board Opinion at 5. A review of Dr. Kann's testimony confirms that Dr. Kann did not deny Claimant had work-related CMC arthritis, RSD/CRPS, and carpal tunnel syndrome. *See* Notes of Testimony November 16, 2016 at 12-23; Reproduced Record (R.R.) at 648a-59a. Instead, Dr. Kann acknowledged these conditions and testified that Claimant had recovered therefrom to a point where she could return to full and unrestricted work. *Id.*

Claimant's argument that the WCJ erred by accepting Weeks' testimony as credible because Weeks had no personal experience performing the positions Employer offered to Claimant, which she described during her testimony, is likewise unconvincing. *See* Claimant's Brief at 26. The WCJ accepted Weeks' testimony as credible. *See* F.F. 7(b). Claimant's challenge to Weeks' testimony based on her lack of personal experience performing the jobs of Sorter and Set-Pack goes to the weight of her testimony. Like credibility determinations, determinations regarding the weight to be afforded to evidence presented are for the WCJ as finder of fact. *See Koszowski*. The Board, in accepting the WCJ's credibility and weight determinations, as it must, determined that the testimony of Dr. Kann and Weeks was substantial evidence supporting the grant of suspension. *See* Board Opinion at 5-6. We agree that this testimony constitutes substantial evidence and, therefore, find no error.

13

For the foregoing reasons, the Board did not err in affirming the WCJ Decision regarding the Suspension Petition.

## The UR Review Petition

Claimant also argues that the Board erred by affirming the WCJ's grant of the UR Review Petition to the extent it disallowed Claimant's compound pain cream as not reasonable and necessary. *See* Claimant's Brief at 23-25. Claimant argues that credible evidence existed that the compound cream was not prescribed until after she had not responded to traditional treatment options. *Id.* at 23. She further argues that, as a matter of public policy, Dr. Kann's opinion regarding the reasonableness and necessity of the compound cream should not have been accepted as credible because it was highly influenced by cost considerations. *Id.* at 24-25. We disagree.

Injured workers enjoy a rebuttable presumption that their treatment for an accepted injury is reasonable and necessary. *Moran v. Workers' Comp. Appeal Bd. (McCarthy Flowers, Donegal Mut. Ins.)*, 78 A.3d 1245, 1248 (Pa. Cmwlth. 2013). However, the Act and pertinent regulations allow any party to seek prospective, concurrent or retrospective UR of an injured worker's medical treatment. *See* 34 Pa. Code § 127.404. Such a challenge to medical treatment is accomplished by submitting a UR request to a URO, which determines only the reasonableness and necessity of the treatment under review. 34 Pa. Code § 127.406(a). If a party disagrees with the URO's determination regarding the questioned medical treatment, the party may file a UR review petition to be heard by a WCJ. Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv). The sole consideration in determining a UR review petition is whether the treatment in question is reasonable and necessary. *Warminster Fiberglass v. Workers' Comp.*

14

*Appeal Bd. (Jorge)*, 708 A.2d 517, 520–21 (Pa. Cmwlth. 1998). "Where the employer questions the reasonableness or necessity of treatment, the employer bears the burden of proving that the challenged treatment is not reasonable or necessary." *Moran*, 78 A.3d at 1248; *see also Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1200 (Pa. Cmwlth. 2018) (stating, "the employer has the burden of proving that a medical expense is unreasonable, unnecessary, or is not related to the accepted work injury"). Additionally, while the report of a URO tasked with determining whether medical treatment is reasonable and necessary becomes part of the record before the WCJ, the WCJ is not bound by the URO determination. 34 Pa. Code § 127.556.

Here, William Mitchell, M.D., conducted the UR of Dr. DiTano's treatment. *See* URO Determination; R.R. at 142a-53a. In the URO Determination, Dr. Mitchell explained that compound creams have "come to the forefront in recent years as a substitute for oral medications . . . since its application is strictly local and bypasses the [gastro-intestinal] systems avoiding complications from medications." URO Determination at 4-5; R.R. at 148a-49a. Dr. Mitchell further stated that "[f]rom the viewpoint of patient safety[, compound cream] is more appropriate than oral medications." URO Determination at 5; R.R. at 149a. Ultimately, the URO Determination determined the compound cream prescribed by Dr. DiTano to be reasonable and necessary. *See* URO Determination at 5; R.R. at 149a.

On behalf of the Employer, in opining that the compound cream was neither reasonable nor necessary, Dr. Kann testified that the compound cream has no proven benefits and that no medical literature has ever supported its efficacy. *See* Notes of Testimony, November 16, 2016 at 16 & 31; R.R. at 652a & 667a. Dr. Kann further explained that insurance companies will not pay for compound cream due to

15

its high cost, lack of proven benefits, and the fact that it is not monitored by the Drug Enforcement Agency (DEA). *See* Notes of Testimony, November 16, 2016 at 16 & 31-32; R.R. at 652a & 667a-68a. Ultimately, Dr. Kann testified that Claimant would not benefit from compound creams, and instead needed only simple over-the-counter anti-inflammatory medications. *See* F.F. 7(c).

The WCJ found Dr. Kann's testimony regarding the compound cream credible and determined that Employer met its burden of proof in the UR Review Petition, having proven the compound cream is not reasonable and necessary.[9] *See* F.F. 7(c); *see also* WCJ Decision, Conclusion of Law (C.L.) 2. While this conclusion directly opposed the findings of the URO Determination, we note that the WCJ was not bound by the URO Determination. *See* 34 Pa. Code § 127.556. Again, as did the Board, we must accept the WCJ's credibility and evidentiary weight determinations. *See Koszowski*. In light of those determinations, we find no error in the Board's affirmance of the WCJ's determination regarding Employer's UR Review Petition.

Claimant's argument that Dr. Kann's testimony regarding the reasonableness and necessity of the compound cream should not be accepted as credible because Dr. Kann's opinion was heavily influenced by cost considerations, *see* Claimant's Brief at 24-25, is unpersuasive. In response to this argument, the Board stated that it "d[id] not agree that passionate language on Dr. Kann's part[10] negates the credibility of his opinion." Board Opinion at 7. The Board noted that "Dr. Kann further testified that compound creams have not been shown to be

---

[9] We note that the WCJ found Claimant's office visits to Dr. DiTano to be reasonable. *See* WCJ Decision, Conclusions of Law 2.

[10] Specifically, Claimant took issue with Dr. Kann's statement that compound creams are "outrageously expensive." *See* Claimant's Brief at 25.

effective and that they are not monitored by the DEA." Board Opinion at 7. The Board noted that Dr. Kann's testimony represented substantial evidence, credited by the WCJ, upon which the WCJ based the grant of the UR Review Petition, and found no error in that determination. Board Opinion at 7. Based on our review of the record, we find that the Board did not err in affirming the WCJ Decision granting the UR Review Petition to the extent it determined the compound cream prescribed by Dr. DiTano unreasonable.

For the reasons stated above, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diana Lackner,                                :
            Petitioner          :
                               :
        v.                           :
                               :
Workers' Compensation Appeal Board  :
(The Anchor Hocking Company),       :      No. 1577 C.D. 2018
                Respondent        :

## O R D E R


AND NOW, this 23rd day of July, 2019, the October 30, 2018 order of the Workers' Compensation Appeal Board is AFFIRMED.


 

_____

CHRISTINE FIZZANO CANNON, Judge